Textiles v. Hillview Mills and Texland Industries v. Hillview Mills

We conclude and so hold that the judgment terminating the trust and ordering the sale of the trust property and subsequent division of the trust assets in accordance with the settlement agreement was fair and proper with respect to all the parties.

Affirmed.

Judges PARKER and WELLS concur.

RAM TEXTILES, INC., A CORPORATION v. HILLVIEW MILLS, INC.; A.I.R. INDUSTRIES, INC.; HENRY A. SINGE: AND RICHARD G. LEVINE TEXLAND INDUSTRIES, INC. v. HILLVIEW MILLS, INC.; A.I.R. INDUSTRIES, INC.; HENRY A. SINGE; AND RICHARD G. LEVINE

No. 8026SC34

(Filed 15 July 1980)

1. **Corporations § 1.1– one corporation not alter ego of another**

Defendant corporation was not the alter ego of a now insolvent corporation so as to make defendant liable for the purchase price of yarn sold to the insolvent corporation, although plaintiff creditors showed a certain degree of relationship among the stockholders and officers of the two corporations, where the evidence showed that defendant was one of about 200 customers of the insolvent corporation, that the insolvent corporation's manufacture of goods for defendant accounted for only 15% of its employees' time and that the president and sole shareholder of the insolvent corporation made all the policy decisions of that company, and where there was no evidence of fraudulent representations or wrongs by defendant or its employees to plaintiff creditors.

2. **Fraudulent Conveyances § 3.4– insufficient evidence of fraudulent conveyance**

Defendant corporation is not liable to plaintiffs for the purchase price of yarn sold to an insolvent corporation on the ground that defendant participated in a fraudulent conveyance of assets of the insolvent corporation where plaintiffs presented no evidence of any conveyance of the assets owned by the bankrupt corporation to defendant; the assets plaintiffs allege were fraudulently conveyed were purchased by defendant from a creditor of the bankrupt corporation which sold them pursuant to a security agreement; and there was no evidence that the sale of such assets constituted a collusive or fraudulent conveyance made with the intent to defraud other creditors.

APPEAL by defendant from *Ervin, Judge.* Judgments entered 20 August 1979 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 3 June 1980.

Ram Textiles sold $92,299.65 worth of yarn to Hillview Mills. Texland Industries sold $58,334.17 worth of yarn to Hillview Mills. Both Ram Textiles and Texland Industries brought actions against Hillview Mills, A.I.R. Industries, Henry A. Singe and Richard G. Levine when they were unable to collect payment from Hillview Mills. Plaintiffs alleged A.I.R. Industries should be held liable for the Hillview Mills debt of approximately $150,000.00 on the grounds that it was an alter ego of Hillview Mills and had participated in a fraudulent conveyance of the assets of Hillview Mills. The cases were consolidated for trial where the following evidence was presented by plaintiffs.

Richard Levine was president of Hillview Mills and vice-president and secretary of A.I.R. Industries. Henry Singe was a former treasurer of A.I.R. Industries and vice-president and later plant manager for Hillview Mills. James Hanrahan is president of A.I.R. Industries. Hillview Mills had operated a hosiery mill in Midland, North Carolina since 1972. All financial policy decisions for Hillview Mills were made by Levine who apparently owns all the stock of that company. Hanrahan and Levine had known each other for about twenty years in 1975 when they formed A.I.R. Industries with each owning half of the stock. Later, Singe was given five percent of the stock leaving Levine with forty-five percent and Hanrahan with fifty percent.

A.I.R. Industries had patents on certain surgical hosiery items which it supplied under a sales agreement to Zimmer, U.S.A. In October 1975, in order to provide these surgical hosiery items, A.I.R. Industries entered into a manufacturing contract with Hillview Mills which would manufacture the products for sale to A.I.R. Industries which would then sell the goods to Zimmer. Levine signed the manufacturing agreement on behalf of Hillview Mills, and Hanrahan signed on behalf of A.I.R. Industries. Some of the terms of the contract were as follows. A.I.R. Industries had no obligation to purchase any minimum quantity from Hillview Mills and could purchase

from other manufacturers. Hillview Mills was required to meet A.I.R. Industries' requirements for the goods. A.I.R. Industries could assign its contract rights but Hillview could not. A.I.R. Industries could terminate the contract upon ten days' notice but no such termination provision was provided for Hillview Mills. The price paid to Hillview Mills was to be fifty percent of the net price received by A.I.R. Industries from its largest customer which thus assured a one hundred percent profit to A.I.R. Industries on the sale of surgical goods since it had only one customer. Payment to Hillview Mills was to come only after A.I.R. Industries had received payment on its resale of the goods.

The only activity of A.I.R. Industries was the selling of the surgical goods manufactured, packaged and shipped by Hillview Mills. Hillview Mills on the other hand manufactured hosiery products for approximately 200 other customers which accounted for approximately eighty-five percent of Hillview Mills' employee time.

Hillview Mills had 250 employees while A.I.R. Industries had four. At the time of the October 1975 agreement, Hanrahan became an employee of Hillview Mills though he did not distinguish between his Hillview Mills employee duties and his presidential duties at A.I.R. Industries. The other three A.I.R. Industries employees were Levine, Singe and a bookkeeper who was also employed by Hillview Mills. The business records of A.I.R. Industries were kept in the New York City corporate headquarters of Hillview Mills.

In April 1976, Hillview Mills entered into a lease of machines used in the manufacture of the surgical hosiery. Hanrahan, the president of A.I.R. Industries, was personal guarantor of the $72,000.00 yearly lease. The lease was put in A.I.R. Industries' name three months later but the equipment remained in the Hillview Mills plant. Another machine and raw materials titled in A.I.R. Industries were also in the Hillview Mills plant. While most of the products manufactured for A.I.R. Industries were manufactured on this equipment loaned to Hillview Mills, other products were manufactured on machinery owned by Hillview Mills.

In February 1977, A.I.R. Industries agreed to an assignment of the Hillview Mills manufacturing agreement to Hillview Manufacturing, a then nonexistent corporation, which was incorporated in April 1977 with Levine the president and owner. The manufacturing agreement of Hillview Mills with A.I.R. Industries was assigned to Hillview Manufacturing in June 1977. The surgical goods were still made for A.I.R. Industries at the Hillview Mills plant in Midland until March 1978.

In mid-1977, Hillview Mills became slow in paying Ram Textiles' invoices. A.I.R. Industries made some payments to Ram Textiles for yarns used in the manufacture of the surgical goods. The Hillview Mills corporate charter was suspended on 30 September 1977.

In October 1977, the payments by A.I.R. Industries for the manufacture of surgical goods were made to Hillview Manufacturing. The goods paid for were manufactured in the Hillview Mills plant in Midland. Over a four month period from October 1977 through January 1978, Levine as president of Hillview Manufacturing and vice-president and secretary of A.I.R. Industries had over $240,000.00 paid to Hillview Manufacturing for the manufacture of surgical goods.

In October 1977, checks given to creditors by Hillview Mills began to bounce. A representative of the two plaintiff creditors in this suit questioned Henry Singe about the financial situation. Singe reassured them about their credit on the basis of the highly profitable surgical line.

In March 1978, at a New York City meeting of Levine, Hanrahan and Singe, Levine announced that Hillview Mills was insolvent. To avoid any interruption in the production of surgical goods, they decided that the equipment used in the surgical goods manufacture should be moved. Congress Factors, a company which lent money to both Hillview Mills and A.I.R. Industries on the security of invoices and which had a lien on the equipment of both companies used in the manufacture of surgical goods, approved and authorized the move of the equipment.

In March 1978, Hillview Mills employees moved the equipment used in the manufacture of surgical goods from the Midland plant to a Concord plant which opened under the name of A.I.R. Industries. The Midland plant was left in a shambles. In April or May 1978, A.I.R. Industries purchased the Hillview Mills equipment in the Concord plant from Congress Factors. Approximately forty of the Hillview Mills employees went to work in the Concord plant. The remainder were let go and Hillview Mills ceased operation. The money owed to the creditors bringing suit in this case was mostly if not entirely for materials purchased in operations other than the surgical goods manufacturing.

At the close of plaintiffs' evidence, A.I.R. Industries moved for directed verdict which was granted. Plaintiffs appeal.

*Casey and Bishop, by Jeffrey L. Bishop, for plaintiff appellants.*

*Moore and Van Allen, by Jeffrey J. Davis, for defendant appellee.*

VAUGHN, Judge.

Plaintiffs' claims against A.I.R. Industries were based on the grounds that it was the alter ego of Hillview Mills and that it had engaged in fraudulent conveyances of the assets of Hillview Mills. We hold that the evidence considered in a light most favorable to plaintiffs does not entitle them to have the jury pass on the alter ego and fraudulent conveyance claims against A.I.R. Industries.

[1] Plaintiffs contend we should extend the liability for the obligations of Hillview Mills beyond the confines of its own separate existence and hold another separate corporate entity, A.I.R. Industries, liable for the debts of Hillview Mills. Plaintiffs' evidence  in a light most favorable to them must show that Hillview Mills and A.I.R. Industries were mere instrumentalities or alter egos of defendant Levine and a shield for the purpose of defrauding creditors in violation of the public policy of this State. If this were proven, Levine, Hillview Mills

and A.I.R. Industries should be treated as one. *Henderson v. Finance Co.*, 273 N.C. 253, 160 S.E. 2d 39 (1968). Plaintiffs' evidence in a light most favorable to them does not show that A.I.R. Industries dominated the policies and business practices of Hillview Mills to the extent that Hillview Mills had no existence of its own.

The evidence shows that A.I.R. Industries' products accounted for approximately fifteen percent of the employee time of Hillview Mills' 250 employees. A.I.R. Industries was one of about 200 customers of Hillview Mills. Levine, the president and apparently the sole shareholder, and not A.I.R. Industries made all the policy decisions for the company. He possibly had the company as his alter ego and so used it as a mere instrumentality of his ends. There is, however, no evidence that A.I.R. Industries had such control.

Plaintiffs have shown a certain degree of relationship among the officers and stockholders of Hillview Mills and A.I.R. Industries. The president and sole shareholder of Hillview Mills, Levine, was a forty-five percent shareholder in A.I.R. Industries. This common ownership, however, is not enough to place liability for Hillview Mills' debts on A.I.R. Industries. Some additional circumstances of fraud are needed. *Huski-Bilt, Inc. v. Trust Co.*, 271 N.C. 662, 157 S.E. 2d 352 (1967). No such additional circumstances arise on the evidence of this case. There is no evidence of fraudulent representations or wrongs by A.I.R. Industries or its employees to plaintiffs. A.I.R. Industries at one point apparently paid for some of the raw material purchased from Ram Textiles and used in the production of the surgical goods manufactured for A.I.R. Industries. This does not indicate a fraud. The trial court properly directed a verdict on the claim.

[2] We turn now to plaintiffs' claim of fraudulent conveyance. A conveyance made with the actual intent to defraud creditors of the grantor which is participated in by the grantee is void. *Aman v. Walker*, 165 N.C. 224, 81 S.E. 162 (1914). Plaintiffs presented no evidence of any conveyance of assets owned by Hillview Mills to A.I.R. Industries. The assets plaintiffs allege were fraudulently conveyed were purchased in April or May 1978 by

In re Foreclosure of Burgess

A.I.R. Industries from Congress Factors which sold them pursuant to a security agreement it had with Hillview Mills. There is no evidence that Congress Factors' authorization of the transfer of the property in which it had a security interest in March 1977 and its subsequent sale of that property was a collusive or fraudulent conveyance made with the intent to defraud creditors. If it were, Congress Factors, which was not a party in this action, would be the defrauding party.

There is no question that plaintiffs lost money in dealing with Hillview Mills but A.I.R. Industries, on the evidence presented, is not liable to them for that loss.

Finally, we note that plaintiffs brought forward on appeal several assigned errors to the trial court's rulings on certain offers of evidence. We find the trial court's rulings proper.

Affirmed.

Judges PARKER and HEDRICK concur.