R. J. Wilson, Appellee, v. Bulletin Publishing Company,
Appellee.

Charles G. Parks, Appellant, v. American Trust & Savings
Bank, Appellee.

**EXECUTION:** Special Levy Ineffectual as to Bank Deposit. A levy
1   on the *mechanical equipment* of a plant under a *special* foreclosure
execution does not reach a bank deposit which accumulates from
the management of the plant by a custodian, pending sale, and
which is deposited in the name of the mortgagor. It follows that
the bank, being without notice of any change in the nature of the
account, may charge the said deposit with the amount of the mort-
gagor's past-due note to the bank.

**EXECUTION:** Amendment of Writ. A mere custodian of property,
2   pending sale under special execution, has no standing to demand a
*nunc pro tunc* amendment of the writ by inserting therein (as per-
mitted by the decree) a clause authorizing a general levy to collect
a balance due on the judgment.

*Appeal from Cedar Rapids Superior Court.*—Atherton B.
Clark, Judge.

December 13, 1921.

Proceedings by Charles G. Parks, as alleged custodian or
trustee, to recover possession of alleged trust funds. Upon full
hearing in the lower court, his application was denied, and he
appeals.—*Affirmed.*

*C. W. Meek*, for appellant.

*Deacon, Good, Sargent & Spangler*, for appellee.

Evans, C. J.—I. The case appears here with a double-
headed title. This arises from the fact that the second-named
case involves auxiliary proceedings in aid of an execution is-
sued under judgment in the first-named case.
No issue is presented in the first-named case, nor
is there any pleading or appearance by either
party thereto. Pursuant to a decree of foreclosure of a chattel

1. Execution: spe-
cial levy inef-
fectual as to bank
deposit.

mortgage in the original case in favor of plaintiff, Wilson, and against the defendant, Bulletin Publishing Company, a special execution was issued and levied upon the mortgaged property. This execution issued out of the superior court of Cedar Rapids, and was executed by the marshal of the city, through his deputy. The deputy marshal, having made the levy and fixed a future date for an execution sale, placed the property thus levied upon in the custody of Parks, the appellant herein. The Bulletin Publishing Company was a going concern, in the job printing business. The foreclosed mortgage covered all its mechanical equipment, including presses, etc. By the acquiescence of all parties, and perhaps under the direction of the deputy marshal, Parks kept the business of the concern going, and for that purpose used the equipment which had been levied upon under special execution. He also collected certain accounts due and owing to the Bulletin Publishing Company, and deposited the same to the general account of such company in the American Trust & Savings Bank, which is the appellee herein. This bank account was an open, existing account at the time that Parks became custodian, and no change in its form was made or suggested at the time of the deposits made by Parks to the credit of the original depositor. The Bulletin Publishing Company was owing the bank upon a past-due promissory note, the amount of which was charged by the bank to this account, the amount thus charged being $257. Parks, being advised of this fact, then notified the bank that the funds in question belonged to him as custodian, and demanded possession of the same. His demand being refused, he obtained from the superior court out of which the special execution issued a citation upon the bank to appear and show cause why it should not surrender to Parks the funds thus appropriated. Pursuant to this citation, the bank appeared, and hearing was had, which resulted as already indicated.

The question presented is whether Parks, as alleged custodian, or the marshal under whom he purported to act, or Wilson, the judgment plaintiff, whose interest he purported to subserve, had any lien upon or interest in the funds in question which was superior to the right of the bank to charge against this account the amount of the past-due note.

To go into a little further detail, Wilson's chattel mortgage covered the following described property:

"Cylinder and platen presses, folder, wire stitcher, cutter, type, cabinets, furniture, stones, leads, and slugs, and all other machinery and accessories not individually specified herein and belonging thereto."

On September 24, 1919, Wilson filed the foreclosure petition, with acceptance of service and waiver of time. On September 25th, he obtained a foreclosure decree, awarding special execution against the above described property. On the 27th, special execution was issued, and on the 29th, it was levied upon the same property. On the same day, Parks was put in custody thereof. This property was used by Parks in continuing the business of the Bulletin Publishing Company. He also assumed to transact all the business of the company, including the collection of accounts, the proceeds of such collections being deposited to the general account of the Bulletin Publishing Company, as had been theretofore done by the company itself. These collections and deposits continued until October 9th, on which date the bank charged against the account its past-due note. At the time of such appropriation by the bank, it had no notice of any change, if any, in the relation of the Bulletin Publishing Company to such account or to the operation of its business.

It is to be observed that Wilson had no lien, under his mortgage, upon any accounts nor upon moneys. The decree conformed to the mortgage. The marshal purported to levy upon no other property than that described in the decree and in the special execution. Whatever right Parks had to collect the accounts and to deposit the same was acquired, if at all, not under the levy of execution, nor under the appointment of the marshal, but by virtue of the consent, or perhaps the mere acquiescence, of the defendant Bulletin Publishing Company. His right, therefore, to the custody did not rise any higher than the right of the Bulletin Publishing Company itself. As between the Bulletin Publishing Company and the bank, the latter had the clear right to charge the note against the general account, not only under the general rule of law obtaining in such a case, but by virtue of the express provisions of the note itself. Therefore, unless there be merit in another contention for the appel-

lant which is considered in the next division hereof, the right of the bank was superior to any right that Parks had, as alleged custodian.

II.   The execution sale was had on October 20th, whereby Wilson became the purchaser of all the mortgaged property, upon a bid much smaller than the amount of the debt.   Some weeks thereafter, and after this proceeding had been begun, and on November 18, 1919, Parks filed a motion to correct the execution *nunc pro tunc*, and that a clause be inserted therein permitting the marshal to seize any and all property of the defendant not exempt from execution, to satisfy any prospective balance after exhausting the mortgaged property.   This application was predicated upon the following provision included in the decree:

2. EXECUTION: amendment of writ.

"   *   *   *   and that, *at the election of plaintiff*, the clerk of this court is authorized to insert in said special execution a clause requiring the marshal or proper officer of said court to seize any property of the said defendant not exempt from execution, to satisfy any prospective balance on said judgment after exhausting the mortgaged premises, or that, after the return of said special execution, a general execution, *if the plaintiff so elect*, shall issue to make any amount then remaining unpaid;   *   *   *"

It will be noted that, by the terms of the decree, the plaintiff Wilson was given his election to take such a clause in his special execution, or to await levy and sale under the special execution, and thereafter to take general execution.   It does not appear that he elected to take the first course.   It does not appear from the marshal's return that any other than the mortgaged property was seized by the marshal.   Moreover, it was Parks who made the motion to correct the execution, and not Wilson.   Parks had neither a right of election nor any interest in the correction of the record.   His motion to correct was properly overruled.

The judgment entered below is, accordingly,—*Affirmed*.

WEAVER, PRESTON, and DE GRAFF, JJ., concur.