AMSTED INDUSTRIES, INCORPORATED, Plaintiff-Appellee, *v.* POLLAK INDUSTRIES, INC., *et al.*, Defendants.—(FRED R. POLLAK, Defendant-Appellant.)

First District (3rd Division)    No. 77-639

Opinion filed October 4, 1978.

Barclay, Damisch & Sinson, Ltd., of Chicago (Theodore W. Wrobleski, of counsel), for appellant.

Aaron E. Hoffman, of Chicago, for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

Plaintiff, Amsted Industries, Inc. (Amsted), brought this action against Fred R. Pollak (Pollak), Pollak Industries, Inc. (Industries), and Pollak Leasing Co., Inc. (Leasing). Plaintiff alleged that its former division, South Bend Lathe (South Bend), had entered into several contracts with Industries for the sale of machinery, and that $64,975 was due plaintiffs for machinery South Bend had delivered pursuant to these contracts. Plaintiff moved for a summary judgment against all three defendants, alleging that the two corporations were in reality operated as one entity and no more than a vehicle for the personal dealings of Pollak. In support of its motion, plaintiff relied primarily on Pollak's deposition and the documents

submitted at that deposition. The defendants submitted no evidence of their own in opposition to the motion but contended that summary judgment was not properly granted on the evidence submitted by the plaintiff.

The trial judge granted plaintiff's motion and entered judgment against all three defendants. In relation to the liability of Mr. Pollak, the trial judge stated: "I think there only can be one interpretation from all of the documents, the deposition, my reading of the deposition, and that these corporations were so interrelated that they were actually affected and controlled by Mr. Pollak." Although the corporate defendants have not appealed, Pollak has appealed that part of the judgment holding him personally liable. The only issue is whether summary judgment was proper.

Plaintiff contends the evidence it submitted conclusively established several facets of the business operations of the three defendants which together indicate that the two corporate defendants were mere alter egos for Pollak and cannot shield him from personal liability. In order to clarify this opinion, the facts which plaintiff cited to support its motion will be presented under each of these facets.

*Pollak's Total Control and Domination of the Corporate Defendants.* Plaintiff contends that Pollak had total control over the corporate defendants and that this is a reason for holding him personally liable. Plaintiff argues that the following demonstrates Pollak's total control over the corporate defendants. Pollak is the sole shareholder of the corporate defendants and was the president and sole director of Leasing. The corporate defendants both admitted in their pleadings that they were under the control and domination of Pollak, and Pollak stated in his deposition that all employees consulted him before entering into any significant transaction.

*The Interwoven Affairs of the Two Corporate Defendants.* Plaintiff argues another reason for holding Pollak liable is that the two corporate defendants in reality ran their affairs as one business. In support of this contention plaintiff relies on evidence that Industries sold new and used machine tools, that Leasing's business was the lease financing of the purchase of this type of tool, that forty percent of Industries' customers obtained their financing through Leasing, and that whenever an Industries' customer inquired about financing, Leasing was suggested. Plaintiff claims this demonstrates that the two corporations "worked hand-in-hand."

Plaintiff cites other facts it contends demonstrate a high degree of interrelation between the two corporations. They shared a common address, common office space, common telephone number, and maintained joint insurance policies. They had common shareholders,

common directors and common officers, and both companies rented space from Pollak through a trust.

*The Financial Interrelation Between Pollak and the Corporate Defendants.* Plaintiff claims the facts show a total financial interdependence between Pollak and the two corporations. Plaintiff directs our attention to the circumstances of a loan Leasing made to Pollak. Plaintiff notes that Pollak could not recall at his deposition whether there was a written instrument reflecting the loan or whether he was paying interest on the loan. Plaintiff places great reliance on the following response Pollak gave in his deposition to an inquiry as to whether he gave security for that loan: "No, it's all my money anyway. I don't have to." Plaintiff characterizes this statement as an admission of total financial interdependence between Pollak and the two corporations.

Plaintiff emphasizes that Pollak instructed one of his office managers to pay South Bend for a machine with a Leasing check rather than an Industries' check. When pressed during his deposition for an answer as to which corporation's check was actually used, Pollak replied: "I don't know what the hell check I gave them." Plaintiff argues that this is an admission by Pollak that it did not matter who paid Amsted because it was all his own money.

As further evidence of the alleged financial interrelationship, plaintiff notes that Pollak was the only source of equity financing for both Industries and Leasing, that Industries leases office equipment worth $30,000 from Pollak for the sum of $100 per month, and that Pollak rents buildings he owns to the two corporations. Plaintiff also notes that Industries had no petty cash fund and that if any corporate need for petty cash arose, Pollak would pay it out of his own pocket.

*The Involvement of Pollak and of Leasing in the Transaction.* The plaintiff argues that the personal involvement of Pollak in its transactions with Industries was extensive and that this is a reason for holding him personally liable. Plaintiff relies on a letter signed by Pollak to South Bend in which Pollak asked for a "personal" meeting with South Bend "in order to keep a good working relationship between South Bend Lathe Company and Fred Pollak." Plaintiff also cites evidence that when South Bend asked for financial statements from its distributors, Pollak told South Bend that he was going to send his personal statement along with the statements of the corporations.

Plaintiff relies heavily on evidence that the stationery containing the different letterheads of the two corporations were intermingled in the transactions with plaintiff and that credit memos and other correspondence were sent by South Bend to Leasing without objection by Leasing. Plaintiff claims this demonstrates that both corporations, not just

Industries, were involved in the transactions, and urges this as a reason for holding Pollak personally liable.

■■ Summary judgment is properly granted when the evidence submitted to support the motion establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (*Heller v. Sullivan* (1978), 57 Ill. App. 3d 190, 194, 372 N.E.2d 1036.) Although inferences may be drawn from undisputed facts, the motion should not be granted unless those facts are susceptible of but a single inference. Where reasonable men could arrive at different results, questions of fact cannot be determined as a matter of law. (*Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 986, 360 N.E.2d 440.) If a material question of fact does exist, an order granting summary judgment must be reversed. *Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393, 349 N.E.2d 1.

■■ ■ We are dealing here with a so-called close corporation, one in which the stock is held in a few hands, and is not frequently bought or sold. (*Galler v. Galler* (1964), 32 Ill. 2d 16, 27, 203 N.E.2d 577.) There is no specified or required minimum number of stockholders for a valid corporate existence, and corporations with a single shareholder have received judicial sanction. (See *Byrd v. Brand* (1976), 140 Ga. App. 135, 230 S.E.2d 113; *Nursing Home Building Corp. v. DeHart* (1975), 13 Wash. App. 489, 535 P.2d 137; *Elliott v. Smith* (1973), 47 Mich. App. 236, 209 N.W.2d 425; *Cole v. Golemi* (La. App. 1972), 271 So. 2d 65; 1 F. H. O'Neal, Close Corporations §1.05, at 8-9 (1971).) In line with the concept of a close corporation, the Business Corporation Act was expressly amended to permit a single director in corporations which have a sole stockholder. (Ill. Rev. Stat. 1975, ch. 32, par. 157.34.) Although the Close Corporation Act was enacted after the relevant time period of this lawsuit, it reaffirms the concept of close corporations in Illinois. (Ill. Rev. Stat. 1977, ch. 32, pars. 1021-1216.) Section 12 expressly permits management by the shareholders of close corporations. This is a recognition of the basic business reality, previously approved by the Illinois Supreme Court (see *Galler*), that in close corporations stock ownership and management control often are found in the same person.

■■ That Pollak controlled and dominated the two corporate defendants, was the sole shareholder and principal manager of the corporations and the sole source of equity financing for both corporations are not reasons under Illinois law for holding him personally liable. And given the nature of close corporations, Pollak's consultation with his employees before the employees committed the corporations to major transactions is not unusual: that a corporation is under the domination and control of a principal stockholder who is entitled to all the corporation's profits does

not violate Illinois law or policy. (See *Galler.*) Thus, nothing in the structure of Leasing and Industries indicates that Pollak should be liable.

Although the business activities of the two corporate defendants were related, the record does not support plaintiff's contention that the two companies worked hand-in-hand. Pollak testified that only 10 percent of Leasing's $1,500,000 of yearly business came from customers of Industries. More than 50 percent of Industries' customers obtained their financing from sources other than Leasing. Pollak testified that Leasing would be suggested to an Industries' customer only after the customer inquired about financing. There is no evidence that Industries' customers were required or forced to utilize Leasing to finance purchases from Industries. These facts indicate a high degree of independent business activity by the two companies.

Other facts in the record rebut plaintiff's claim that the affairs of the two corporations were highly interwoven. Pollak testified that the companies had separate employees paid by the company which employed them; that the companies had separate directors' meetings and kept separate minute books; that they had separate bank accounts; that they never advertised together, and that they never circulated a joint financial statement.

■■ There is evidence that the two corporations were related to some degree. However, evidence that the two companies had common shareholders and directors, and that both companies started business with capital advanced by Pollak personally does not justify imposing personal liability upon Pollak. This structure existed because both companies were close corporations, organized and owned solely by the same individual. Nothing in these facts indicates that Pollak was not entitled to the benefits of the corporate form of business organization.

In any event, the degree of interrelatedness of the two corporate defendants is irrelevant to the issue of this appeal which is the personal liability of Pollak. Evidence that the affairs of the two corporations were interwoven relates to the liability between the two corporations, rather than the personal liability of Pollak. That the two corporations may have been operated as one does not mean that some legitimate corporate entity did not exist to shield Pollak from personal liability.

Next, the evidence fails to support plaintiff's claim of a total financial interdependence between Pollak and the corporate defendants. That Pollak did not give security for money he borrowed from Leasing does not in itself fasten him with personal liability for Industries' debts to a third party. This fact alone does not support the conclusion that Pollak intermingled his and Industries' funds. And Pollak's statement—"[I]t's all my money anyway"—does not bear the conclusive weight that plaintiff contends it does. His statement is ambiguous and may be interpreted only

as Pollak's view of the structure of a close, sole stockholder corporation because in his eyes as the sole stockholder he owned the entire corporation. The statement does not establish an intermingling of personal and corporate funds.

There is no evidence the accounts or records of Pollak and the corporations were commingled or that funds were transferred indiscriminately from one to the other. The record indicates that any loans Pollak made to the corporations were paid back, and that no money was borrowed from Industries. There is no evidence that Pollak borrowed an excessive amount of money from Leasing or that he never intended to pay back what he did borrow. Thus the record supports the inference that an intermingling of funds did not occur.

Pollak's written instruction to his secretary to use a Leasing check to pay for a machine from South Bend also is inconclusive as to Pollak's personal liability. The check was not produced at the deposition so it was not established which company's check was actually used. Pollak explained this isolated transaction by stating that Leasing purchased a machine Industries had previously bought from South Bend. Whatever the reason this transaction was structured in this manner, neither this single transaction or Pollak's response that he did not know what check was used establishes any indiscriminate use of corporate funds as a regular practice. Further, this evidence demonstrates at most a failure to adhere to formalities between the corporations which, as stated above, is not a reason to hold Pollak personally liable.

Although the two corporations rented space in buildings owned by Pollak, the record indicates that they paid him rental and that they were current in their rental payments. In any event, it is not at all unusual for the shareholders of a close corporation to lease to their corporation real property owned by them. The use by Industries of Pollak's office equipment at a nominal charge may indicate that the equipment is a capital contribution which creditors could attach to satisfy their claims, but the arrangement is not a reason for piercing the veil. And that Pollak may have occasionally dipped into his own pocket to pay a petty cash expense of Industries is explained by his testimony that any such cash requirements were too small to justify a petty cash fund. In comparison, Pollak testified that Leasing maintained a petty cash fund which was not utilized by Industries.

Pollak's involvement in the transaction with South Bend is not a proper basis for holding him personally liable. Pollak had done a large amount of business with South Bend and had extensive business contacts with that corporation; that he utilized these contacts to advance the business of his corporations does not mean the corporate entity should be disregarded. And as stated above, the principal or sole stockholder in close

corporations is permitted to play an active role in management. As long as the separate corporate identity is maintained, this stockholder may negotiate with third parties without incurring personal liability. Plaintiff cited nothing which indicates that the separate corporate identity was not maintained. Although Pollak, upon South Bend's request for financial statements, wrote South Bend that he was going to forward his personal statement with those of the two corporate defendants, Pollak informed South Bend in this same letter of the formation of Industries and that South Bend would be doing business with this corporate entity rather than Pollak personally. Thus Pollak made clear to South Bend that his involvement was only as a representative of Industries. That Pollak volunteered his own financial statement to South Bend does not make him personally liable.

It is true, as plaintiff contends, that the exhibits do indicate some degree of failure to adhere to the use of separate corporate stationery in the transactions with South Bend. However, Pollak testified this was the result of secretarial error due to several changes in the companies' stationery. This raises the inference that the intermingling of stationery was not the result of a conscious disregard of the separate corporate entities. Further, although this evidence together with evidence that Leasing received without objection invoices sent to it by South Bend tends to prove that Leasing was involved in the transaction with South Bend, it does not indicate that Leasing and Industries were not legitimate corporate entities shielding Pollak from liability, or that Pollak interjected himself on a personal basis into the transactions.

Plaintiff at best points out a failure by the defendants to adhere to minor formalities. It has failed to demonstrate any substantial reason for piercing the corporate veil by summary judgment. For instance, Pollak testified in his deposition that Industries was adequately capitalized to carry on business. Plaintiff introduced no evidence to the contrary. A corporation's capitalization is a major consideration of courts in deciding whether a legitimate separate corporate entity was maintained. (Note, *Inadequate Capitalization as a Basis for Shareholder Liability: The California Approach and a Recommendation,* 45 S. Calif. L. Rev. 823 (1972).) Thus, the only evidence in the record on the issue of capitalization goes against granting of the summary judgment. If Industries was adequately capitalized, evidence that stationery was intermingled on occasion or that Industries did not maintain a petty cash fund pales in significance.

■■ Sufficient questions of fact existed to preclude the granting of summary judgment against Pollak. As shown above, Pollak's deposition contained a number of facts which rebutted plaintiff's contentions and created genuine issues of material fact. Because the record discloses that

reasonable men could arrive at different conclusions on the issue of Pollak's personal liability, the summary judgment entered in plaintiff's favor is reversed. The cause is remanded for trial on that part of the complaint seeking relief against Pollak as an individual.

Judgment reversed and cause remanded for further proceedings.

McNAMARA and McGILLICUDDY, JJ., concur.