320 S.E.2d 515

**SOUTHERN ELECTRICAL
SUPPLY CO.**

v.

**RALEIGH COUNTY NATIONAL BANK.**

No. 15974.

Supreme Court of Appeals of
West Virginia.

July 11, 1984.

Eugene D. Pecora, Beckley, P. Rodney Jackson, DiTrapano & Jackson, Charleston, for appellant.

David T. Kennedy, Thornhill, Kennedy & Vaughan, Beckley, for appellee.

HARSHBARGER, Justice:

William Gibson is president and sole stockholder of Gibson Electric Company, an electrical contracting firm, and president and majority stockholder (seventy-five percent) of Southern Electrical Supply Company, a dealer in electrical materials. (The other twenty-five percent of Southern Electrical stock is owned by its vice-president Alden Fitzpatrick.)

In 1980, Gibson Electric contracted with Willis and Paul to do electrical work, including furnishing labor and supplies, for building a coal preparation plant in Kentucky. The Raleigh County Bank made three ninety-day loans to Gibson Electric on February 2, February 25 and April 15, 1980 for $31,218.75 $5,206.25 and $5,160.11. By June, the first two notes were delinquent.

On June 17, 1980, the bank received a wire transfer that stated: "Raleigh Cnty Natl Bk Beckley W.VA/AC Southern Electric Supply (Gibson Electric) AC 005 826 0". It was from Willis and Paul for $27,568.78. The account number belonged to Southern Electrical, so the bank made up a deposit slip and mailed it to Southern.

Later that day, however, a bank officer ordered the deposit slip voided and deposited the money in Gibson Electric's account instead, and then used the newly deposited money to offset Gibson Electric's delinquent notes. The next day when Mr. Gibson was in the bank, a bank officer informed him about what was done.

Southern Electrical sued the bank for conversion of funds[1] without its consent or authority by taking money designated for and deposited in its account and transferring it to Gibson Electric's. The bank excused its behavior by claiming that Gibson Electric and Southern Electrical were both, in reality, alter egos of William Gibson, and should be viewed as one entity; that the funds deposited in Southern's account were payment for work done by Gibson Electric; and that Gibson asked Willis and Paul to make its check to Southern to avoid Gibson Electric's liability on its notes to the bank.

Southern responded that the money was due it for supplies on the Kentucky job, but in any event, a bank cannot alter deposit slips or wire transfers made by depositors. Southern pled that the bank had not specifically pleaded fraud as required by our rules of civil procedure, and was barred from later raising the matter at trial to prove its alter ego theory. Finally, Southern insisted that the court had no legal reason to disregard its corporate structure.[2]

After discovery, both sides moved for partial summary judgment about the bank's liability. The Circuit Court of Ra-

---

1. The bank filed suit that same week against Gibson Electric for payment of three overdue notes.

2. Southern also complained that its vice-president wrote checks dependent upon that deposit, that the checks were not honored, and that he was therefore charged with a felony for writing worthless checks. While Fitzpatrick did write checks on June 16, 1980 in apparent anticipation of this deposit, the felony warrant was unrelated to those checks. It was based on a May 19, 1980 check, written one month earlier. If the bank wrongfully dishonored checks, the corporation has a remedy in the Uniform Commercial Code.

leigh County granted summary judgment to the bank on October 6, 1982, finding as fact that the deposited money had been paid to William Gibson for work done by Gibson Electric in Kentucky, and that it was not owed to Southern. The court determined that Gibson Electric owed money to Southern (although the basis of the debt was not established),[3] so Gibson had instructed Willis and Paul to deposit the money in Southern's account and not Gibson's. That deposit was made without regard to the effect it would have on creditors of either of the companies. The trial judge's opinion continued:

> "It is not a small matter that the wire transfer was made in the name of "Southern" and that it showed the account number of "Southern", while at the same time "Gibson" was indicated on the transfer in parenthesis. This demonstrates that Mr. Gibson had both Companies in mind at the time he sent the wire transfer to Raleigh County National Bank."

The court concluded that William Gibson made a wrongful transfer of the funds belonging to Gibson Electric when he had that money deposited in the Southern Electrical account, and that that transfer was for the apparent purpose of frustrating the bank's exercise of its right of setoff from the Gibson Electric account.

Southern appealed because of the trial court's failure to grant it summary judgment as a matter of law. We agree, and reverse.

### SUMMARY JUDGMENT

■ Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the matter can be decided by application of rules of law. *Clendenin Lumber and Supply Co. v. Carpenter*, 172 W.Va. 375, 305 S.E.2d 332 (1983); *Aetna Casualty & Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

The relevant facts as recited above are undisputed.[4] The only issue is whether the bank had authority to deposit money wired to "Southern Electric Supply" (Gibson Electric) using Southern's account number, in Southern's account, with an appropriate deposit slip mailed to Southern; and then without leave or let from anyone, to cancel the deposit and reroute the funds to Gibson Electric's account, against which it could, and did, exercise setoff rights. This single legal issue case is appropriate for summary judgment.[5]

### TRANSFER OF FUNDS

Southern's primary argument is that a bank has a contractual obligation to follow its depositor's instruction and if it withdraws money from a customer's account without that customer's specific directions, it may be contractually or tortiously liable. *Smith v. American Bank & Trust Co.*, 639 S.W.2d 169 (Mo.App.1982); *Taylor v. Equitable Trust Co.*, 269 Md. 149, 304 A.2d 838 (1973); *General Apparel Sales Corp. v. Chase Manhattan Bank*, 321 F.Supp. 891 (S.D.N.Y.1970); *Reliance Insurance Co. v. North Carolina National Bank*, 39 N.C.App. 420, 250 S.E.2d 699, 704 (1979); 10 Am.Jur.2d *Banks* §§ 338, 494 (1963 and Supp.). The bank countered that while that is ordinarily true, a depositor will not be permitted to avoid a bank's setoff rights by putting a deposit in another account.

3. The bank now concedes that Gibson Electric may have owed Southern money for supplies purchased for the Kentucky project.

4. We find the trial court erred in finding as fact that Gibson deposited the money. The wire transfer clearly originated from Willis and Paul, and there is nothing in the record to contradict that fact.

5. This determination also requires us to test the applicability of the alter ego doctrine. *See* discussion, *infra.* Ordinarily questions about alter egos should not be determined by summary judgment because they involve complicated factual proofs. 1 Fletcher, *Cyclopedia of Corporations* § 41.95. We decide it here because no relevant facts are contested and both sides have moved to have the matter decided by summary judgment. *Cf., Cray v. Kennedy,* 230 Kan. 663, 640 P.2d 1219 (1982) (where the court decided about piercing a corporate veil to see if two companies were "affiliates" of each other based on stipulated facts.) The bank should not have moved for summary judgment if it intended to produce additional evidence on this point.

*Arnold v. San Ramon Valley Bank,* 184 Cal. 632, 194 P. 1012 (1921); *Fory v. American National Bank,* 136 La. 298, 67 So. 10 (1914); *Citizens' Trust & Guaranty Co. v. Farmers' Bank,* 166 Ky. 234, 179 S.W. 29 (1915); *Traders' National Bank v. Amsden,* 195 N.Y.S. 291 (S.Ct.1922), *aff'd.,* 208 A.D. 828, 203 N.Y.S. 956 (1924); *Aidala v. Savoy Trust Co.,* 128 N.Y.S. 619 (S.Ct. 1911); *Wilson v. Bulletin Publishing Co.,* 192 Iowa 860, 185 N.W. 893 (1921).

We find the bank's cases distinguishable or representative of different rules. In *Arnold v. San Ramon Valley Bank, supra,* a man transferred his funds into an account in his wife's name to avoid his creditors. The bank was fully aware of the arrangement and honored the man's checks on his wife's account in the same manner as it had done when it had been in his name. This use of his wife's name was a matter of convenience and the account was really a general account between him and the bank. Therefore, the court had no trouble finding that the bank had a right to set off that man's indebtedness from his wife's account. Here, however, Southern's account was not created by closing another account and transferring funds from it to the new account to avoid creditors. There is no claim that the bank knowledgeably participated in some such arrangement. Southern and Gibson Electric had separate, legitimate accounts, and the bank had never treated Gibson Electric as the true depositor in Southern's account.

In *Fory v. American National Bank, supra,* plaintiff was president of a corporation that was indebted to defendant bank, and he and the bank had an agreement that $4,000 of certain insurance funds credited to his corporate account would be used to pay off past-due corporate debts. Without knowledge of the bank's president, with whom that agreement was made, plaintiff withdrew those corporate insurance proceeds and deposited them to his personal credit. The bank ultimately set the corporate debt off against his personal account. It was critical to the *Fory* decision that the specific funds in the corporate account had been pledged to payment of the debt to the bank by binding agreement. The bank and Fory knew the source of the funds already deposited in the corporate account. After making the deposit in accord with the agreement that $4,000 of it was to be paid to the bank, Fory fraudulently withdrew it. The bank was permitted to capture the funds from his personal account. Raleigh County National Bank cannot show that money was deposited in Southern's or Gibson Electric's accounts and then fraudulently withdrawn, or that it had a binding agreement with Gibson about that money.

*Citizens' Trust & Guaranty Co. v. Farmers' Bank, supra,* is also inapposite because there was a specific writing between depositor-debtor and its bank that allocated to the bank for debt payment specific deposits in the debtor's account. There were deposits by a contractor into a subcontractor's account and the subcontractor owed the bank which took them for payment on the subcontractor's debt. It did not unilaterally transfer them to the subcontractor in order to exercise its setoff rights.

In *Traders' National Bank v. Amsden, supra,* the court determined the decedent-husband had fraudulently deposited money in his wife's name to avoid his indebtedness to the bank, and granted the bank a lien on the wife's account, finding that the account truly belonged to decedent-debtor. "In case of dispute, the bank must establish its lien, and that is what it seeks to do and has done in this case." *Id.,* 195 N.Y.S. at 292. We emphasize that portion because it reiterates a point we make later, *see infra,* that in doubtful cases, a bank must go to court and prove its right to set off funds in another party's account.

*Aidala v. Savoy Trust Co., supra,* is also not analogous because a depositor represented himself to be another person and made a deposit in that other person's name. He did not make the deposit for the benefit of another person, but fraudulently induced the bank to believe he was that other person to avoid his indebtedness to the bank on his account. *Wilson v. Bulletin Publishing Co., supra,* does not even require discussion.

We would be hardpressed to think of a situation in which we could condone a bank's decision to ignore the instructions of a depositor and unilaterally decide to alter a deposit. A depositor may contractually grant a bank the right to remove deposits from his account to pay off his matured indebtedness to the bank, see discussion *infra* on setoffs, but he may only contract to have *his* deposit account set off—not another's.[6] To get to a third party's funds, a bank would need explicit authority from that third party. *Smith v. American Bank & Trust Co., supra; Taylor v. Equitable Trust Co., supra; General Apparel Sales Corp. v. Chase Manhattan Bank, supra.* Whether the unauthorized person is a stranger, family, or bank officer, the withdrawal is wrongful. When a wire transfer comes to a bank, it is obligated by the transmission to credit the designated account. *Securities Fund Services, Inc. v. American National Bank and Trust Co.,* 542 F.Supp. 323, 329 (N.D.Ill.1982). Raleigh County National Bank did that; but then moved the money to another account!

## SETOFF

The bank said that the money was truly Gibson Electric's for work done on the Kentucky project, that its deposit in the Southern Electrical account was a sham intended to defraud the bank of its legitimate setoff rights, and that Southern and Gibson Electric were alter egos of Gibson, giving the bank implicit authority to make this otherwise unorthodox transfer.

Banks have a common law right to setoff.[7] The right may also be provided for in a contract between depositor and bank. The prerequisites to exercising that right are (1) existence of a debtor-creditor relationship between bank and customer, (2) the customer's ownership of a general deposit account in the bank, and (3) mutuality of matured indebtedness.

A bank account creates a contractual debtor-creditor relationship between bank and depositor. *Bank of Marin v. England,* 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966); *United States Fidelity and Guaranty Co. v. Home Bank for Savings,* 77 W.Va. 665, 88 S.E. 109, 110 (1916). *But see,* Symons, *Bank-Customer Relation,* Pts. I and II, 100 Banking Law Journal 220–246; 325–353 (1983). A bank takes title to funds on deposit and becomes a debtor for that amount to the depositor, the customer, who becomes the bank's creditor. If a bank loans a customer money, then it becomes a creditor and the customer is a debtor.

The second requirement before setoff is appropriate, is that the deposit be in a general account. A special deposit is segregated for a specific purpose, and a bank may not set off a depositor's indebtedness against such an account. *Lutz v. Williams,* 79 W.Va. 609, 91 S.E. 460 (1917) and 84 W.Va. 216, 99 S.E. 440 (1919). Banks are obliged to keep special accounts separate. They may be payroll accounts, trust accounts, escrow deposits or the like. A general deposit, the more common type, serves any general banking purpose. 10 Am.Jur.2d *Banks* § 673 *et seq.;* 9 C.J.S. *Banks and Banking* § 273, *et seq.* A bank must have knowledge or reason to believe that an account is a special account before it can be deprived of its setoff rights.

Finally, there must be a mutuality of indebtedness. That means that the depositor must owe the bank a matured debt while the bank owes the depositor money based on his general deposit account. Mutuality requires the same parties with the

---

**6.** Even if he has a joint bank account with another party, he cannot generally have that other party's deposit set off against his indebtedness. *See* Annot., Bank's Right of Setoff, Based on Debt of One Depositor, Against Funds in Account Standing in Names of Debtor and Another, 68 A.L.R.3d 192 (1976 and Supp.).

**7.** *Lutz v. Williams,* 79 W.Va. 609, 91 S.E. 460, 462 (1917); 10 Am.Jur.2d *Banks* § 666 *et seq.;* 9

C.J.S. *Banks and Banking* § 296, *et seq.;* TeSelle, *Banker's Right of Setoff–Banker Beware,* 34 Okla.L.Rev. 40 (1981).

The right may also be provided for in a contract between depositor and bank. In this case, Gibson Electric's three loans specifically granted the bank authority to set off indebtedness against Gibson Electric's account.

same rights. A bank has no right by common law to set off funds in one account against an indebtedness on another account. Nor does it have the right to set off funds in a debtor's account that the bank has reason to believe belongs to someone else. *See* Annot., Bank's Right to Apply Third Person's Funds, Deposited in Debtor's Name, On Debtor's Obligation, 8 A.L. R.3d 235 (1966 and Supp.). Setoff relates to debts and deposits of the same person. Any question about whether a debtor and depositor of specific funds are the same should preclude setoff against those funds.

We found no case anywhere, anytime wherein a bank *ex parte* transferred funds in order to exercise setoff rights such as this one did, but a few cases and concepts may be analogous. In *Cherokee Carpet Mills v. Worthen Bank and Trust*, 262 Ark. 776, 561 S.W.2d 310 (1978), Cherokee Carpet contracted with Turner-McCoy to build a plant. Turner-McCoy had an account with defendant bank and owed the bank $175,000. In addition to a mortgage, Turner-McCoy gave the bank a security interest in all its contract rights and account receivable. When Cherokee Carpet gave Turner-McCoy a partial payment for work done on the building project, Turner-McCoy deposited the money in its general account with the bank. The next day the bank applied all the money in Turner-McCoy's account (including the check from Cherokee Carpet) to Turner-McCoy's matured indebtedness. Turner-McCoy failed to pay many of its subcontractors and suppliers for work on the Cherokee Carpet project. Cherokee bought the subcontractor's rights and sued the bank to have the setoff set aside. The Chancery Court denied relief, and the Supreme Court affirmed. It is enlightening to review the court's rationale.

Cherokee Carpet's first argument was that the funds of a contractor are by law held in trust for subcontractors and materialmen. The relevance of the trust argument is that a bank may not set off funds in a depositor's account if those funds are held in trust for another party or belong to a third person. *See generally*, Annot., Bank's Right to Apply Third Person's Funds, Deposited in Debtor's Name, on Debtor's Obligation, 8 A.L.R.3d 235 (1966 and Supp.). If money in a contractor's account is held in trust for subcontractors, a bank might not have its usual setoff right.

The court rejected Cherokee's contention that a contractor holds funds in trust for subcontractors, but acknowledged that under certain circumstances, a resulting trust theory may apply. Even if a contractor were a resulting trustee of the funds, the Arkansas Supreme Court reasoned that the bank could not be deprived of its right to setoff unless it had *knowledge* or *adequate notice* of the trust, or at least has been *put on inquiry* that there was a beneficiary entitled to the funds.

Unlike *Cherokee Carpet*, where money was deposited in the account of the bank's debtor but allegedly belonged to materialmen, here the deposit was to a materialman's account (Southern Electrical) and the bank moved it to a contractor's (Gibson Electric's) account to enable it to set off the contractor's matured indebtedness. If Gibson Electric is a resulting trustee of the funds paid by Willis and Paul for the Kentucky project's use of Southern Electrical's materials, the bank's setoff rights would depend on the notice it had about the trust. Forgetting for the moment the bank's lack of authority to move the funds, it still would not have a right of set off under those circumstances because it had adequate notice that the funds may have belonged to a third party other than the debtor. There could be no clearer notice than the intentional deposit in Southern Electrical's account.

This same theme about notice of another party's right to a depositor's account depriving a bank of its setoff rights[8] was

---

8. The different approaches to what kinds of notice or knowledge are required to prevent a bank's exercise of setoff rights are carefully explained in Annot., *supra* 8 A.L.R.3d 235, and cases cited therein. *See also* 10 Am.Jur.2d *Banks* §§ 676–677 and 9 C.J.S. *Banks and Banking* § 302, *et seq.* These sources also explain the "federal" or "equitable" rule. Because that eq-

discussed in *Morrison Steel Co. v. Gurtman*, 113 N.J.Super. 474, 274 A.2d 306 (1971). That case was remanded to determine whether the bank properly exercised its setoff rights, noting that if the bank knew or had reason to inquire whether funds in a depositor's account belonged to someone else, there was no setoff right.

The question of mutuality of demands underlying a bank setoff arose in *Get It Kwik of America v. First Alabama Bank*, Ala., 361 So.2d 568 (1978). Plaintiff bought two SSS stores. One of the store's inventory was subject to a filed security interest based on a loan between SSS and the defendant bank. After plaintiff purchased that store, it opened an account at defendant bank and wrote a check for over $4,500 that was returned "insufficient funds" because the bank took all the money in plaintiff's account and paid it on SSS's debt.

The Alabama Supreme Court found that the bank had no right to do that because there was no debtor-creditor relationship between it and plaintiff, and thus there was no mutuality of demand. The debt belonged to SSS, not plaintiff, and plaintiff had not assumed the debt nor become a debtor of the bank. The court did find that plaintiff might be liable to the bank for conversion of its security interest in the collateral, but that did not affect the illegitimacy of the bank's setoff and wrongful dishonor of plaintiff's check.

■ There is a clear analogy to this case. There was no debtor-creditor relationship with mutual demands between Southern Electrical and the bank; no loan between Southern Electrical and the bank; and the existence of a general deposit account made the bank a debtor to Southern Electrical, but it was not a creditor. There was no mutuality. Hence, the bank had no right to set off funds in Southern's account for Gibson Electric's debt. *Westerly Community Credit Union v. Industrial National Bank*, 103 R.I. 662, 240 A.2d 586 (1968), although involving a complicated and totally different situation, resulted in the court finding a bank to have wrongfully exercised setoff because there had been no mutuality between the debtor, depositor and bank.

### ALTER EGO

This bank justified its actions by arguing that the Southern Electrical account and Gibson Electric account were in reality one (or should be viewed as one) because both corporations were the alter egos of William Gibson. He was sole or majority shareholder in both corporations, they had the same officers and same office address, and Gibson controlled both companies.

The alter ego doctrines, alternatively "instrumentality", "identity", "agency", "piercing the corporate veil", or "disregarding the corporate fiction",[9] are designed to prevent injustice when the corporate form is interposed to perpetrate an intentional wrong, fraud or illegality.[10]

---

uitable rule involves cases in which the bank did not have notice, it is not relevant here.

9. We recognize that each of these names designates a slightly different doctrine, but they have a similar intent and effect. *See e.g.*, H. Henn, *Law of Corporations*, p. 250, n.2 (2d ed. 1970). Courts use some of them interchangeably. *E.g.*, *Vantage View, Inc. v. Bali East Development Corp.*, 421 So.2d 728, 733 (Fla.App.1982). It is usual that the alter ego theory seeks access to shareholders' assets for corporate liabilities, whereas "instrumentality" is generally employed to hold one corporation liable for the acts or contractual obligations of another corporation that is within its total control. *See generally* 1 Fletcher, *Cyclopedia of Corporations* (Perm.Ed.1983 Rev.) §§ 41.10, 43, 43.10; Annot., Liability of Corporation for Contracts of Subsidiary, 38 A.L.R.3d 1102 (1971 and Supp.).

10. *Southern States Co-Operative, Inc. v. Dailey*, 167 W.Va. 920, 280 S.E.2d 821 (1981); *Sanders v. Roselawn Memorial Gardens*, 152 W.Va. 91, 159 S.E.2d 784, 800 (1968); *William C. Atwater & Co. v. Fall River Pocahontas Collieries Co.*, 119 W.Va. 549, 195 S.E. 99 (1938); 1 Fletcher, *Cyclopedia of Corporations*, (Perm.Ed.1983 Rev.) §§ 41, 41.20 *et seq.*; 18 Am.Jur.2d *Corporations* § 14 (1965 and Supp.); 18 C.J.S. *Corporations* §§ 6, 7 (1939 and Supp.). *See* Note, *Disregarding the Corporate Fiction in Florida: The Need for Specifics*, 27 U.Fla.L.Rev. 175 (1974–75); Grossman, *Alter Ego: A Perplexing Doctrine*, 51 L.A.B.J. 233 (1975–76); Corrigan and Schirott, *Piercing the Corporate Veil: Dispelling the Mists of Metaphor*, 17 Trial Lawyer's Guide 121 (1973 Annual); Note, *Disregard of the Corporate Entity*, 4 Wm. Mitchell L. Rev. 334 (1978); Krendl and Krendl, *Piercing the Corporate Veil: Focus-*

The doctrine is complicated, and it is applied gingerly.[11] We stated in *Southern States Co-Operative, Inc. v. Dailey*, 167 W.Va. 920, 280 S.E.2d 821, 827 (1981):

> Justice may require that courts look beyond the bare legal relationship of the parties to prevent the corporate form from being used to perpetrate injustice, defeat public convenience or justify wrong. However, the corporate form will never be disregarded lightly. The mere showing that one corporation is owned by another or that they share common officers is not a sufficient justification for a court to disregard their separate corporate structure. *Lipshie v. Tracy Inv. Co.*, 93 Nev. 370, 566 P.2d 819 (1977). Nor is mutuality of interest, without the countermingling of funds or property interests, or prejudice to creditors, sufficient. *First National Bank v. Walton*, 146 Wash. 367, 262 P. 984 (1928). Rather it must be shown that the

corporation is so organized and controlled as to be a mere adjunct or instrumentality of the other. *Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2*, 95 Nev. 463, 596 P.2d 227 (1979); *Duplan Corp. v. Deering Milliken, Inc.*, 444 F.Supp. 648 (D.S.C.1977).

We did not find facts in *Southern States Co-Operative* requiring us to ignore the corporate form. It is not easily proved and the burden of proof is on a party soliciting a court to disregard a corporate structure.[12]

A corporate shield may, of course, be "pierced" to subject a sole shareholder to liability for corporate acts or to make a corporation liable for behavior of another corporation within its total control.[13] But decisions to look beyond, inside and through corporate facades must be made case-by-case, with particular attention to factual details.[14]

*ing the Inquiry*, 55 Denver L.J. 1 (1978); Barber, *Piercing the Corporate Veil*, 17 Willamette L.Rev. 371 (1980–81); Comment, *Disregarding the Entities of Closely Held and Parent-Subsidiary Corporate Structures in Alabama*, 12 Cumberland L.Rev. 155 (1981–82); Note, *Piercing the Corporate Law Veil: The Alter Ego Doctrine Under Federal Common Law*, 95 Harv.L.Rev. 853 (1981–82).

**11.** *Pardo v. Wilson Line*, 414 F.2d 1145, 1149–50 (D.C.App.1969); *Merkel Associates v. Bellofram Corp.*, 437 F.Supp. 612 (W.D.N.Y.1977); *County Maid v. Haseotes*, 299 F.Supp. 633 (E.D.Pa.1969); Syll. Pt. 3, *Ramsey v. Adams*, 4 Kan.App.2d 184, 603 P.2d 1025 (1979); *Amoco Chemicals Corp. v. Bach*, 222 Kan. 589, 567 P.2d 1337, 1341 (1977); *Abraham v. Lake Forest*, 377 So.2d 465, 468 (La.App.1979); *William B. Roberts v. McDrilling Co.*, 579 S.W.2d 335, 345 (Tex.Civ.App.1979), *reh. denied*; *Shaw v. Bailey-McCune Co.*, 11 Utah 2d 93, 355 P.2d 321, 322 (1960).

**12.** *Wheeling Kitchen Equipment Co. v. R & R Sewing Center*, 154 W.Va. 715, 179 S.E.2d 587, 590 (1971). *Publicker Industries v. Roman Ceramics Corp.*, 603 F.2d 1065 (3d Cir.1979), *appeal after remand*, 652 F.2d 340; *C.M. Corp. v. Oberer Development Co.*, 631 F.2d 536, 539–541 (7th Cir.1980); *In Matter of Christian and Porter Aluminum Co.*, 584 F.2d 326 (9th Cir.1978); *Brunswick Corp. v. Waxman*, 459 F.Supp. 1222 (E.D.N.Y.1978); *Volkswagenwerk, A.G. v. Klippan, GmbH*, 611 P.2d 498, 506 (Alaska 1980), *cert. denied*, 449 U.S. 974, 101 S.Ct. 385, 66 L.Ed.2d 236; *Ize Nantan Bagowa, Ltd. v. Scalia*, 118 Ariz. 439, 577 P.2d 725, 729 (1978); *Vasey v.*

*California Dance Co.*, 70 Cal.App.3d 742, 139 Cal.Rptr. 72, 76 (1977); *South Side Bank v. T.S.B. Corp.*, 50 Ill.Dec. 369, 94 Ill.App.3d 1006, 419 N.E.2d 477 (1981); *Dixon v. Process Corp.*, 38 Md.App. 644, 382 A.2d 893, 900 (1978), *cert. denied*; *Ecklund v. Nevada Wholesale Lumber Co.*, 93 Nev. 196, 562 P.2d 479 (1977) [volume not on shelves—check later]; Syll. Pt. 4, *Schmid v. First Camden Nat. Bank & Trust*, 130 N.J.Eq. 254, 22 A.2d 246 (1941).

**13.** *See generally* Annot., Liability of Corporation for Contracts of Subsidiary, 38 A.L.R.3d 1102 (1971 and Supp.); Annot., Stockholder's Personal Conduct of Operations or Management of Assets as Factor Justifying Disregard of Corporate Entity, 46 A.L.R.3d 428 (1972 and Supp.). Some courts will more readily disregard a corporate form in cases of tort liability than in contract cases because contracts are voluntarily entered into with the corporate structure. *Hickman v. Rawls*, 638 S.W.2d 100 (Tex.App.1982); *Hanson v. Bradley*, 198 Mass. 371, 10 N.E.2d 259 (1937); 1 Fletcher *Cyclopedia of Corporations*, *supra* at § 41.85.

**14.** *Brunswick Corp. v. Waxman*, 459 F.Supp. 1222 (E.D.N.Y.1978); *Alorna Coat Corp. v. Behr*, Ala., 408 So.2d 496, 498 (1981); *Platt v. Billingsley*, 234 Cal.App.2d 577, 44 Cal.Rptr. 476, 482 (1965); *Cray v. Kennedy*, 230 Kan. 663, 640 P.2d 1219 (1982); Syll. Pt. 3, *Kilpatrick Bros. v. Poynter*, 205 Kan. 787, 473 P.2d 33 (1970); *Action Plumbing and Heating Co. v. Jared Builders*, 368 Mich. 626, 118 N.W.2d 956, 958 (1962); *Brown Bros. Equipment Co. v. State Highway Commission*, 51 Mich.App. 448, 215 N.W.2d 591, 593

Decisions to "pierce" involve multifarious considerations, including inadequacy of capital structures, whether personal and corporate funds have been commingled without regard to corporate form by a sole shareholder, whether two corporations have commingled their funds so that their accounts are interchangeable; whether they have failed to follow corporate formalities, siphoning funds from one corporation to another without regard to harm caused either entity, or failed to keep separate records. Other reasons to disregard the structure are: *total* control and dominance of one corporation by another or a shareholder; existence of a dummy corporation with no business activity or purpose; violation of law or public policy; a unity of interest and ownership that cuases one party or entity to be indistinguishable from another; common shareholders, common officers and employees, and common facilities. 1 Fletcher, *Cyclopedia of Corporations* (Perm.Ed.1983 Rev.) § 41.30 *et seq.;* H. Henn *Law of Corporations* (2d ed.1970) § 148; Powell *Parent and Subsidiary Corporations* 9 (1931); 18 Am.Jur.2d *Corporations* § 14; 18 C.J.S. *Corporations* §§ 6, 7 (1939 and Supp.); Annot., Stockholder's Personal Conduct of Operations or Management of Assets as Factor Justifying Disregard of Corporate Entity, 46 A.L.R.3d 428 (1972 and Supp.); Annot., Liability of Corporation For Torts of Subsidiary, 7 A.L.R.3d 1343, 1355 (1961).

This evidence must be analyzed in conjunction with evidence that a corporation attempted to use its corporate structure to perpetrate a fraud or do grave injustice on an innocent third party seeking to "pierce the veil." *Brunswick Corp. v. Waxman,* 459 F.Supp. 1222, 1234 (E.D.N.Y.1978); *Saphir v. Neustadt,* 177 Conn. 191, 210, 413 A.2d 843, 853 (1979); *Lowendahl v. Baltimore & Ohio Railroad,* 247 A.D. 144, 157, 287 N.Y.S. 62, 75, *aff'd.,* 272 N.Y. 360, 6 N.E.2d 56 (1936); *Old Southern Life Ins. Co. v. Bank of North Carolina,* 36 N.C. App. 18, 244 S.E.2d 264 (1978); *Mortgage & Trust, Inc. v. Bonner & Co.,* 572 S.W.2d 344, 350 (Tex.Civ.App.1978), *reh. denied.*

■ The law presumes that two separately incorporated businesses are separate entities and that corporations are separate from their shareholders.[15] 1 Fletcher, *supra* at §§ 25, 41.30, 41.35. 18 Am.Jur. *Corporations* § 14; 18 C.J.S. *Corporations* § 5; H. Ballantine, *Corporations* § 122 (rev. ed. 1946); H. Henn, *Law of Corporations,* §§ 68, 252 (2d ed. 1970); F. Powell, *Parent and Subsidiary Corporations* § 1 (1931); N. Lattin, *The Law of Corporations* § 11 (2d ed. 1971).

Raleigh County National Bank did not submit sufficient evidence to overcome this presumption. Our state law permits close corporations, with one shareholder, so we cannot disregard a corporation solely because it has one or two, and the same, shareholders.[16] Nothing in our law prohib-

(1974); Syll. Pt. 4, *Schmid v. First Camden National Bank & Trust,* 130 N.J.Eq. 254, 22 A.2d 246 (1941); *Mobridge Community Industries, Inc. v. Toure, Ltd.,* S.D., 273 N.W.2d 128, 132 (1978); *Tigrett v. Pointer,* 580 S.W.2d 375, 381 (Tex.Civ.App.1978), *err. ref. no rev. err.; Shaw v. Bailey-McCune Co.,* 11 Utah 2d 93, 355 P.2d 321 (1960).

**15.** *E.g., Crown Central Petroleum Corp. v. Cosmopolitan Shipping Co.,* 602 F.2d 474, 476 (2d Cir.1979); *Krivo Industrial Supply Co. v. National Distillers and Chemical Corp.,* 483 F.2d 1098, 1102 (5th Cir.1973), *modified,* 490 F.2d 916 (1974); *Forester & Jerue v. Daniels,* Ala., 409 So.2d 830, 832 (1982); *Cohen v. Williams,* 294 Ala. 417, 318 So.2d 279, 281 (1975); Syll. Pt. 1, *Ramsey v. Adams,* 4 Kan.App.2d 184, 603 P.2d 1025 (1979); *Blackwell Printing Co. v. Blackwell-Wielandy Co.,* 440 S.W.2d 433, 437 (Mo.1969); *Ferrante Equipment Co. v. Lasker-Goldman*

*Corp.,* 26 N.Y.2d 280, 309 N.Y.S.2d 913, 258 N.E.2d 202, 204 (1970); *Grayson v. Nordic Construction Co.,* 92 Wash.2d 548, 599 P.2d 1271, 1273 (1979).

**16.** *Accord Kirno Hill Corp. v. Holt,* 618 F.2d 982, 985 (2d Cir.1980); *Martin v. Pilot Industries,* 632 F.2d 271, 276 (4th Cir.1980); *Matter of Multiponics,* 622 F.2d 709, 725 (5th Cir.1980); *Bendix Home Systems v. Harston Enterprises,* 566 F.2d 1039, 1042 (5th Cir.1978); *Read News Agency v. Moman,* 383 So.2d 840, 844 (Ala.Civ.App.1980), *writ denied,* 383 So.2d 847; *Ize Nantan Bagowa, Ltd. v. Scalia,* 118 Ariz. 439, 577 P.2d 725, 728 (1978); *Hill v. Dearmin,* 44 Colo.App. 123, 609 P.2d 127 (1980); *Barnes v. Finnegan Enterprises,* 150 Ga.App. 430, 258 S.E.2d 55 (1979); *Sturdivant v. Chapman,* 146 Ga.App. 26, 245 S.E.2d 311, 313 (1978); *Pierson v. Jones,* 102 Idaho 82, 625 P.2d 1085 (1981); *Bankers Trust Co. v. Chicago Title and Trust Co.,* 45 Ill.Dec. 309, 89

its one man or group from starting or owning two separate corporations with common purposes.[17] *See, Kap-Tex, Inc. v. Romans,* 136 W.Va. 489, 67 S.E.2d 847, 852 (1951).[18]

■ Each of Gibson's corporations served a separate purpose although their businesses were related. That relationship does not justify disregarding their separateness.[19] Nor does common ownership or common management without evidence of fraudulent conduct, *total* control, or a "dummy" corporation justify piercing a corporate veil.[20]

The court was shown no evidence that either corporation was undercapitalized, none that funds were commingled, nor that one corporation controlled the other, but only that Gibson owned all the stock in one and three-fourths of the other's. *See Southern States Co-operative, supra.* Ac-

cord, *Ramsey v. Adams,* 4 Kan.App.2d 184, 603 P.2d 1025 (1979). *But see Talen's Landing v. M/V Venture II,* 656 F.2d 1157 (5th Cir.1981); *Zaist v. Olson,* 154 Conn. 563, 227 A.2d 552 (1967). The bank did not go after Gibson's personal account, but after another corporation's. The evidence of common ownership and management presented, plus an *unproved* allegation that money was deposited in Southern Electrical's account to defraud the bank, and nothing more, do not meet the bank's burden of proving alter ego. *See Angelo Tomasso v. Armor Construction & Paving,* 187 Conn. 544, 447 A.2d 406 (1982); *Amsted Industries v. Pollak Industries,* 22 Ill.Dec. 73, 65 Ill.App.3d 545, 382 N.E.2d 393 (1978); *Village Press v. Stephen Edward Co.,* 120 N.H. 469, 416 A.2d 1373 (1980); *Musman v. Modern Deb,* 50 A.D.2d

---

Ill.App.3d 1014, 412 N.E.2d 660, 663 (1980); *Amoco Chemicals Corp. v. Bach,* 222 Kan. 589, 567 P.2d 1337, 1341 (1977); *Abraham v. Lake Forest,* La.App. 377 So.2d 465, 471 (1979); *Mingin v. Continental Can Co.,* 171 N.J.Super. 148, 408 A.2d 146, 148 (1979); *Dember Construction Corp. v. Staten Island Mall,* 56 A.D.2d 768, 392 N.Y.S.2d 299, 300 (1977); *BeWigged by Suzzi v. Atlantic Dept. Stores,* 49 Ohio App.2d 65, 3 Ohio Op.3d 125, 359 N.E.2d 721, 725, fn. 1 (1976); *Glazer v. Cambridge Industries,* 281 Pa.Super. 621, 422 A.2d 642, 644 (1980); *William B. Roberts v. McDrilling Co.,* 579 S.W.2d 335, 346 (Tex. Civ.App.1979); *Grayson v. Nordic Construction Co.,* 92 Wash.2d 548, 599 P.2d 1271, 1274 (1979).

**17.** *Accord Russell v. Birmingham Oxygen Service,* Ala. 408 So.2d 90 (1981); *Amsted Industries v. Pollak Industries,* 22 Ill.Dec. 73, 65 Ill.App.3d 545, 382 N.E.2d 393 (1978); *Wiedemann v. Cunard Line Ltd.,* 29 Ill.Dec. 723, 63 Ill.App.3d 1023, 380 N.E.2d 932 (1978); *Bart Arconti & Sons v. Ames-Ennis,* 275 Md. 295, 340 A.2d 225, 236 (1975); *Village Press v. Stephen Edward Co.,* 120 N.H. 469, 416 A.2d 1373 (1980); *Waff Bros. v. Bank of North Carolina,* 289 N.C. 198, 221 S.E.2d 273, 280 (1976); *Howco Leasing Corp. v. Oregon Lumber Export Co.,* 283 Or. 225, 582 P.2d 4 (1978); *Associates Development Corp. v. Air Control Products,* 392 S.W.2d 542, 544 (Tex. Civ.App.1965).

**18.** We recognize that the separate entities of two affiliated corporations owned by the same party or parent corporation may be disregarded if the other prerequisites are met. *See Liability of A Parent or Affiliate,* 71 Harv.L.Rev. 1122, 1131 (1958); Henn, *Law of Corporations* § 148 (2d ed. 1970).

**19.** *Accord, Citronelle-Mobile Gathering v. O'Leary,* 499 F.Supp. 871, 876 (S.D.Ala.1980); *Jabczenski v. Southern Pacific Memorial Hospitals,* 119 Ariz. 15, 579 P.2d 53 (1978); *Nuttall v. Lankford,* 186 Va. 532, 43 S.E.2d 37 (1947).

**20.** *William C. Atwater & Co. v. Fall River Pocahontas Collieries Co.,* 119 W.Va. 549, 195 S.E. 99, 104 (1938); *C M Corp. v. Oberer Development Co.,* 631 F.2d 536, 538–539 (7th Cir.1980); *In re Bowen Transports,* 551 F.2d 171 (7th Cir.1977); *Energy Reserves Group v. Superior Oil Co.,* 460 F.Supp. 483, 506–507 (D.Kan.1978); *Rea v. Anson Corp.,* 79 F.R.D. 25, 29 (W.D.Okl.1978); *Skouras v. Admiralty Enterprises,* 386 A.2d 674, 681 (Del.Ch.1978); *Amsted Industries v. Pollak Industries,* 22 Ill.Dec. 73, 65 Ill.App.3d 545, 382 N.E.2d 393 (1978); *Team Central v. Teamco,* —— Iowa ——, 271 N.W.2d 914 (1978); *American Commercial Lines v. Ostertag,* —— Ky.App. ——, 582 S.W.2d 51, 53 (1979); *Dixon v. Process Corp.,* 38 Md.App. 644, 382 A.2d 893, 899–900 (1978); *Bonanza Hotel Gift Shop v. Bonanza No. 2,* 95 Nev. 463, 596 P.2d 227 (1979); *Port Chester Electrical Construction Corp. v. Atlas,* 40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d 983 (1976); *Waff Bros. v. Bank of North Carolina,* 289 N.C. 198, 221 S.E.2d 273 (1976); *Ram Textiles v. Hillview Mills,* 47 N.C.App. 593, 267 S.E.2d 700 (1980); *Botwinick v. Credit Exchange,* 419 Pa. 65, 72, 213 A.2d 349, 353–354 (1965); *United Transit Co. v. Nunes,* 99 R.I. 501, 209 A.2d 215, 219–220 (1965); *Mortgage & Trust v. Bonner & Co.,* 572 S.W.2d 344 (Tex.Civ.App.1978), *ref. n.r.e.; Associates Development Corp. v. Air Control Products,* 392 S.W.2d 542 (Tex.Civ.App. 1965), *err. ref., no rev. err.; Anderson v. Section 11,* 28 Wash.App. 814, 626 P.2d 1027 (1981). *See also* 4B Michie's Jurisprudence *Corporations* § 5, p. 252; 18 C.J.S. *Corporations* § 5j, at 374.

761, 377 N.Y.S.2d 17 (1975); 1 Fletcher, *supra* at § 41.30.

Having moved for summary judgment on this point, the bank has precluded itself from introducing more evidence to support its position. We find as a matter of law that the evidence introduced was insufficient to allow a court to treat both corporations as one entity.

Banks, unlike other creditors, are given a self-help remedy of setoff to collect matured indebtedness from a customer's general bank account. A self-help remedy, while constitutionally permissible,[21] must be carefully exercised. In questionable situations a bank has a paramount obligation to refrain from encroaching upon its customers' interests. *See TeSelle, supra*, 34 Okla.L.Rev. 40 (1981). It certainly should not transfer money from one account to another upon its own belief that it could ignore corporate separateness.

A bank always has traditional collection remedies as provided by the Code and courts, and if a Raleigh County National Bank officer believed it was entitled to Southern Electrical's deposit, it should have sued Gibson Electric, Gibson and Southern Electrical, and presented its alter ego theory. Whether a corporate structure should be disregarded is peculiarly a ques-

tion for courts to determine from evidence. *Vann v. Shilleh*, 54 Cal.App.3d 192, 126 Cal.Rptr. 401 (1976); 1 Fletcher *Cyclopedia of Corporations, supra* § 41.95, fn. 6; 18 C.J.S. *Corporations* § 6, 1983 Supp. at 108.

### CONCLUSION

This bank had no explicit or implicit authority to transfer funds from one corporation's account to another's and then setoff those funds against the second corporation's indebtedness.

We reverse the summary judgment entered in favor of the bank. Southern Electrical is entitled to partial summary judgment declaring the bank did not have authority to transfer its funds and set them off against Gibson Electric's indebtedness. We remand the case for further proceedings on other claims and matters raised, consistent with this opinion.

Reversed and remanded.

---

**21.** *See generally* Annot., Post-Sniadach Status of Banker's Right to Set Off Bank's Claim Against

Depositor's Funds, 65 A.L.R.3d 1284 (1975 and Supp.).