**CHICAGO DISTRICT COUNCIL OF CARPENTERS PENSION FUND, Chicago District Council of Carpenters Welfare Fund, and the Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program Fund, Plaintiffs,**

v.

**SUNSHINE CARPET SERVICES, INC., and TCB Carpet Services, Inc., Dale Davis, Diane Davis, and Lexington Homes, Defendants.**

No. 93 C 4012.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 31, 1994.

Collins Parkin Whitfield, Terrance Bryan McGann, Joseph Patrick Berglund, Daniel Paul McAnally, John Stephen O'Donnell, Hugh J. McCarthy & Associates, Ltd., Chicago, IL, for Chicago Dist. Council of Carpenters Pension Fund, Chicago Dist. Council of Carpenters Welfare Fund, Chicago and Northeast Illinois Dist. Council of Carpenters Apprentice and Trainee Program Fund.

Robert Patrick Casey, Carol A. Poplawski, Murphy, Smith & Polk, Chicago, IL, for Sunshine Carpet Services, Inc., TCB Carpet Services, Inc., Dale Davis, Diane Davis and Dan Davis.

Steven Jay Teplinsky, Donald Joseph Vogel, Fagel & Haber, Sheryl C. Allenson, Fagel & Haber, Chicago, IL, for Lexington Homes.

Peter J. Miller, Donald Naylor Wilson, Robbins, Salomon & Patt, Ltd., Chicago, IL, for Tracy Group Inc. and Koeckritz Intern., Inc.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court are the parties' cross motions for summary judgment. For the following reasons, the cross motions are, respectively, granted in part and denied in part.

### FACTS[1]

This suit concerns the liability for contribution payments which plaintiffs claim defendants owe as a part of an agreement with the Carpenter's Union and under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The plaintiffs are the Chicago District Council of Carpenters Pension Fund, the Chicago District Council of Carpenters Welfare Fund, and the Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program Fund (collectively "Trust Funds"). There are five defendants named in the second amended complaint. The cross motions for summary judgment, though, concern only four defendants: Sunshine Carpet Service, Inc. ("Sunshine"), TCB Carpet Service, Inc. ("TCB"), Dale Davis ("Dale"), and Diane Davis ("Diane") (collectively "Defendants").

The two corporate defendants, Sunshine and TCB, were subcontractors engaged in the business of carpet installation. Dale incorporated TCB under the laws of Illinois in February 1990, and he was its sole officer and shareholder. Dale's home in Algonquin, Illinois, served as TCB's corporate office. The Trust Funds contend that TCB was formed due to the failure of Dale's former company, Dale Davis Installations, Inc ("DDI"). TCB was incorporated at the time Dale was dissolving DDI. Dale explained in his deposition that the Carpenter's Union audited DDI, and discovered a $50,000 discrepancy. Since Dale did not have the capital to satisfy the discrepancy, he later filed for bankruptcy in August 1990.

Dale incorporated Sunshine under the laws of Illinois in August 1990. Dan Davis ("Dan"), Dale's father, acted as the president

---

1. The following facts are taken from the parties' submissions filed pursuant to Local Rules 12(M) and 12(N) of the Rules of the United States District Court for the Northern District of Illinois.

of Sunshine and Diane, Dale's wife, was its Secretary and Treasurer. Dale's home in Algonquin, Illinois, served as Sunshine's corporate office. However, at the time of the incorporation, it was Dale's intention to fully control and operate Sunshine, using his father only as a figurehead. Dale reasoned that since he had recently filed for bankruptcy on behalf of DDI, the Trust Funds would not be amenable to entering into another agreement with him; hence, Dale sought out his father.[2]

Sunshine entered into the Carpenter's Collective Bargaining Agreement ("Agreement") with the Trust Funds in October 1990, executed by Dan as the president of Sunshine. The Agreement required the participant-employers to provide monthly contributions and reports to the Trust Funds based upon the hours employees and subcontractors worked. In August 1993, the Trust Funds conducted an audit for the period of October 1990 through July 1993. Based on this audit, the Trust Funds assert that Sunshine owed $265,980.07, exclusive of costs.

The Trust Funds' central assertion is that Sunshine failed to make agreed upon contributions, and that Dale, Diane, and TCB, as the alter ego of Sunshine, must each be held liable for that deficiency.[3] Defendants contend that Sunshine and TCB each had its own identity and purpose; the one to perform union work, the other to perform non-union work. Furthermore, Defendants add that, in any event, the Trust Funds should not be allowed to pierce the corporate veil so as to hold Dale and Diane personally liable for Sunshine's deficiencies.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Transportation Communications Int'l Union v. CSX Transp., Inc.*, 30 F.3d 903, 904 (7th Cir.1994). Summary judgment is not a discretionary remedy and must be granted when it is warranted. *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir.1994) (per curiam). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Associated Milk Producers, Inc. v. Meadow Gold Dairies*, 27 F.3d 268, 270 (7th Cir.1994), presenting only a scintilla of evidence will not suffice to oppose a motion for summary judgment, *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir.1994).

### A. Alter Ego Doctrine

The first issue concerns the corporate alter ego doctrine. The Trust Funds contend that Dale's TCB corporation is merely the alter ego of the signatory corporation, Sunshine. They argue that the manner in which Dale controlled the two corporations was so similar that the two corporations were indistinguishable. If the court so finds, the Trust Funds could recover against both corporations for any deficiency which Sunshine incurred under the Agreement. *Central States Pension Fund v. Sloan*, 902 F.2d 593, 596 (7th Cir.1990); *Penntech Papers, Inc. v. N.L.R.B.*, 706 F.2d 18, 24 (1st Cir.1983) (holding that a non-signatory employer will be bound as a signatory where the court finds an alter ego relationship).

■ The court notes that the purpose underlying the alter ego doctrine in the ERISA context is to prevent a corporate business from limiting its pension fund responsibilities by fractionalizing its business operations. *Central States Pension Fund v. Ditello*, 974 F.2d 887, 890 (7th Cir.1992); *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 459 (7th Cir.1991). "[T]he alter ego doctrine fo-

---

2. "[B]ecause I just assumed that the local 1185 wouldn't sign a contract if I opened another company or whatever. So I went to my dad and asked him if he would sign a contract with the union, just put his name on a piece of paper stating that's the owner or whatever and that's what we did." (Dale Davis Dep. at 47.)

3. The parties agree that the amount of damages is not at issue in these cross motions for summary judgment.

cuses on '... an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets.' " *International Union of Operating Eng'r v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir.1987) (quoting *Penntech*, 706 F.2d at 24). As such, if one corporation incurs withdrawal liability, then all other businesses within the control group of the first may be held equally liable. *See* 29 U.S.C. § 1201(b)(1). There is a federal interest in ignoring the corporate form to impose liability in cases concerning pension benefits governed by ERISA. *Lumpkin*, 933 F.2d at 460; *see Alman v. Danin*, 801 F.2d 1, 3 (1st Cir.1986) ("ERISA ... cannot be said to attach great weight to corporate form"); *but see Central States Pension Fund v. Johnson*, 991 F.2d 387, 390 (1993) (holding that "Congress did not ... generally authorize pension funds to disregard the corporate form and hold shareholders directly responsible for unfulfilled ERISA obligations"). However, even though the corporate form may be ignored, it is not destroyed. *Lumpkin*, 933 F.2d at 462. The alter ego doctrine pierces the veil only to the extent required to effectuate justice. *Id.*

■ "Because disregard of the corporate entity is essentially an equitable doctrine, application of the theory will depend upon the circumstances in each case." *Koch Refining v. Farmers Union Central Exchange*, 831 F.2d 1339, 1345 (7th Cir.1987); *Chicago Plastering Inst. Pension Trust Fund v. W.A. Duguid*, 761 F.Supp. 1345, 1348 (N.D.Ill. 1991) (explaining that the alter ego analysis is heavily fact-laden). Although there is no litmus test in the federal courts for determining when the corporate form should be ignored, *Alman*, 801 F.2d at 3, the Seventh Circuit Court of Appeals has recognized three factors for determining whether the underlying objectives of the alter ego doctrine have been satisfied: (1) the amount of respect which the shareholders give to the separate entity; (2) the fraudulent intent involved; and (3) the amount of injustice which

parties would suffer by respecting the corporate entity. *Lumpkin*, 933 F.2d at 461 (citing to *Laborers Clean–Up Contract Admin. Trust Fund v. Uriarte Clean–Up Serv., Inc.*, 736 F.2d 516 (9th Cir.1984)); *see Chicago Plastering*, 761 F.Supp. at 1348 ("Alter egos generally are found where two enterprises share 'substantially identical management, business purpose, operation, equipment, customers, and supervision as well as ownership.' "). Of these three factors in the alter ego analysis, the Seventh Circuit affords greatest weight to the second factor, the motive and intent of the shareholders. *International Union of Operating Eng'r v. Centor Contractors*, 831 F.2d 1309, 1312 (7th Cir.1987).[4]

In *Central States Pension Fund v. Sloan*, the Seventh Circuit carefully weighed facts in its alter ego analysis and found for the plaintiff pension fund. 902 F.2d at 597. The *Sloan* court stated that the transfer of assets to a second company owned by the defendant's wife, with no money changing hands, showed that the defendant's motivation was to avoid the collective bargaining agreement. *Id.* The court emphasized that the defendant and his wife remained married throughout; that the offices of both companies were located on the defendant's property; that the equipment of the two companies was housed within the same building on property owned by defendant and his wife as joint tenants; and that there were close financial ties between the companies, notwithstanding separate telephone numbers and different billing operations and records. *Id.* Based on the foregoing, the *Sloan* court held that the first company was the alter ego of the second.

■ In the case at bar, the court finds that the undisputed facts are sufficient to warrant application of the alter ego doctrine. Defendants admit to "some interrelation of operations between TCB and Sunshine, including some common management and some common hourly employees, and that the same individual manages the day-to-day busi-

---

4. Contrary to the Trust Funds' assertion, it is not necessary to demonstrate the factors of the single employer doctrine in order to prevail under the alter ego doctrine. *Trustees of Pension Funds of Local 701 v. Favia Elec. Co., Inc.*, 995 F.2d 785, 789 (7th Cir.1993) ("Meeting all of the elements of the single employer doctrine is not essential to a finding that the alter ego doctrine applies, however.").

ness affairs of both companies." (Defs.' Answer at 4.) In point of fact, Sunshine and TCB shared two vehicles, corporate office space, bookkeepers, and business address. In addition, both companies were subcontractors involved in carpet installation and received their projects almost exclusively from a company called Koeckritz International. With respect to the companies' officers, Dale and Diane each acted as one or more officers for the two companies.[5]

Moreover, the assets of TCB and Sunshine were commingled somewhat. Cash was transferred between TCB and Sunshine thirty-four times totalling $176,875.35. Some of Sunshine's union employees were compensated from TCB's coffer at Dale's direction. The following is an abstract from Dale's deposition taken September 29, 1993:

Q. So you paid—you figured out their gross payment then—

A. Well, I knew what that was.

Q. You knew what that was?

A. Right.

Q. Those are the hours that you reported and paid on?

A. Yes.

Q. Whatever was left over you paid them out of a TCB check?

A. Right. Because, like I said, the money just—it wasn't there. I wouldn't even be in business if I paid the full hours on all the guys.

Q. That was in calculating what was sent into the funds. It was based on what would make them eligible, not how much work was done for Sunshine and how much was done for TCB?

A. Yeah, pretty much.

Q. Then the men would receive two paychecks in a given week, one from Sunshine and one from TCB so that that jived with the reports that went into the union?

A. Correct.

Q. And you had the two separate checks because you knew from your previous experience with Dale Davis Installations

that if you got audited you want two different companies.

A. Yeah.

(Dale Davis Dep. at 64–65.) This exchange demonstrates Dale's intention to use TCB as a front to maintain Sunshine solvent whenever Sunshine could not meet the requirements of the Agreement. Dale wished to keep Sunshine, the signatory company, to receive subcontracting work slotted for union employees only. Dale incorporated TCB to serve as the means to skirt certain requirements of the Agreement. The court is sympathetic to the fact that Dale was not able to comport with the Agreement and keep Sunshine out of bankruptcy. However, Dale's difficulties with the seemingly harsh union collective bargaining agreement is not enough to disregard the Agreement. *Centor Contractors*, 831 F.2d at 1314 (stating that federal labor policy cannot allow avoidance of collective bargaining obligations). But the undisputed facts are sufficient to disregard the paper identities which Dale created. Accordingly, the court finds that TCB, as an entity, was an attempt to avoid the obligations of a collective bargaining agreement, and the court holds that TCB is the alter ego of Sunshine and may be pierced as to Sunshine.

### B. Liability of the Shareholders

The second issue raised in the cross motions is whether the Trust Funds may pierce the corporate veil of the respective companies to attach liability as to Dale and Diane individually. A number of circuits have held that an individual is not liable for corporate ERISA obligations merely due to his role as officer, shareholder, or manager. *Sasso v. Cervoni*, 985 F.2d 49 (2d Cir.1993) (citing to four circuits in accord). The Seventh Circuit has likewise held that ERISA does not attach liability to an officer not personally committed to the collective bargaining agreement. *Plumbers' Pension Fund, Local 130 v. Niedrich*, 891 F.2d 1297 (7th Cir.1989); *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1193–94 (7th Cir.1989). Though the Trust Funds raise the applicability of the alter ego doctrine here, separately from their corporate veil argument, the court finds that the

---

**5.** In actuality, it was principally Dale who conducted the business affairs of both companies.

following discussion sufficiently addresses all relevant aspects of the issue.

■ Since ERISA has no special rules regarding shareholder liability, the Seventh Circuit has determined that state law controls the issue. *Levit,* 874 F.2d at 1193–94; *Niedrich,* 891 F.2d at 1301. Under Illinois law, there are two requirements for piercing the corporate veil:

[F]irst, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and, second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.

*Lumpkin,* 933 F.2d at 462 (quoting *Gallagher v. Reconco Builders, Inc.,* 91 Ill.App.3d 999, 47 Ill.Dec. 555, 558–59, 415 N.E.2d 560, 563–64 (1980)); *Koch Ref.,* 831 F.2d at 1345; *In re Rehabilitation of Centaur Ins. Co.,* 158 Ill.2d 166, 198 Ill.Dec. 404, 406, 632 N.E.2d 1015, 1017 (1994). A plaintiff may satisfy the first element with evidence of misrepresentation, undercapitalization, commingling of assets or identities, failure to operate at arm's length, or failure to comply with corporate formalities. *Lumpkin,* 933 F.2d at 463; *Koch Ref.,* 831 F.2d at 1345. A plaintiff may satisfy the second element with evidence of fraud or injustice. *Lumpkin,* 933 F.2d at 463; *Koch Ref.,* 831 F.2d at 1345.

■ In the case at bar, neither Dale nor Diane were parties to the Agreement that obligated Sunshine to contribute. As such they are not personally liable to the Trust Funds. With respect to piercing the corporate veil, the court finds that the evidence presented is not sufficient to satisfy the first element as outlined in *Lumpkin,* 933 F.2d at 462. Although there may have been a commingling of assets between TCB and Sunshine, the evidence does not warrant a finding that their assets were commingled with Dale and Diane's personal assets. Furthermore, the companies complied with the relevant corporate formalities. For instance, the evidence does not demonstrate that the companies were undercapitalized. As held in *Secon Serv. Sys., Inc. v. St. Joseph Bank and Trust Co.,* 855 F.2d 406, 416 (7th Cir.1988),

undercapitalization is measured at the time of incorporation, and here there is no evidence of such a deficiency. While the lines may have been blurred as between TCB and Sunshine, the lines between them and their shareholders were marked. *See Amsted Indus., Inc. v. Pollak Indus., Inc.,* 65 Ill.App.3d 545, 22 Ill.Dec. 73, 77, 382 N.E.2d 393, 397 (1978).

As mentioned above, courts may ignore the corporate form more readily in ERISA cases, *Lumpkin,* 933 F.2d at 460, *Alman,* 801 F.2d at 3; nevertheless, personal liability is not warranted in every case, *Johnson,* 991 F.2d at 390 (confronting the issue of whether withdraw liability may attach to a spouse). The *Johnson* court reasoned that Congress did not license pension funds to bypass corporate protections and attach individual liability directly to shareholders for unsatisfied ERISA contributions. 991 F.2d at 390–91. Federal courts recognize a distinction between disregarding the corporate shell to hold shareholders liable and disregarding the corporate shell to hold it liable as the alter ego of another corporation. Furthermore, because the court finds that the first element for piercing the corporate veil is not met, the court need not address the second element pertaining to fraud. Accordingly, Dale and Diane may not be held personally liable for the ERISA deficiencies of Sunshine and TCB.

## CONCLUSION

For the foregoing reasons, the Trust Funds' motion for summary judgment is granted as to the alter ego relationship between Sunshine and TCB, and Defendants' motion for summary judgment is granted as to the personal liability of Diane and Dale. The remaining aspects of the cross motions are denied.

IT IS SO ORDERED.