575 S.E.2d 639

David STANLEY, dba L & D Contractors, Limited Liability Company, Plaintiff Judgment–Creditor Below, Appellant,

v.

HARRISON COUNTY BANK, Defendant–Suggestee Below, Appellee.

Allegheny Power, Defendant–Suggestee Below, Appellee,

Bank One, West Virginia, NA, Intervenor Below, Appellee.

No. 30629.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 13, 2002.

Decided Dec. 3, 2002.

Concurring Opinion of Justice Starcher Dec. 10, 2002.

Dissenting Opinion of Justice McGraw Dec. 11, 2002.

Gregory T. Hinton, Esq., Fairmont, for Appellant.

Evans L. King, Jr., Esq., Steptoe & Johnson, Gregory A. Morgan, Esq., Young Morgan & Cann, Clarksburg, for Appellee Bank One, West Virginia, NA.

PER CURIAM:

In the instant case, the circuit court granted summary judgment in a lien priority case. We affirm the circuit court's judgment.

## I.

The plaintiff below and appellant in this Court is David Stanley, dba L & D Contractors, a limited liability company. The appellee in this Court is Bank One, West Virginia, N.A. ("Bank One"), which was an intervenor below.

The instant case began on February 7, 2001, when the appellant served a suggestion on the Harrison County Bank ("HCB"), seeking to collect funds owed to the appellant as the result of a judgment order of the Circuit Court of Harrison County in the amount of $126,033.63 against Linn Mining Company ("Linn"), dated November 2, 2000. The judgment order and suggestion came after the appellant prevailed in a Harrison County lawsuit against Linn on a breach of contract claim. The jury's verdict against Linn was for $108,312.58; interest and costs increased that amount by the time the order was entered.

When the suggestion was served on HCB, on February 7, 2001, HCB had funds on deposit for Linn in the total amount of $29,107.65. HCB filed an answer to the suggestion in circuit court, acknowledging having the Linn funds and seeking the court's direction as to how to dispose of them. On May 18, 2001, Bank One moved to intervene in the suggestion proceeding, claiming that it had a security interest in Linn's HCB account funds, and that Bank One's interest had priority over the appellant's judgment and suggestion.

The circuit court allowed Bank One's intervention, received briefs in argument, and on September 17, 2001 issued a summary judgment order agreeing with Bank One's posi-

tion. The court reaffirmed this order on December 5, 2001. The issue in the instant appeal is whether the circuit court was correct. We present other pertinent facts in our discussion *infra.*

## II.

■■■ The parties agree that the pertinent facts are not disputed and that the case was in the proper posture for the circuit court to grant summary judgment. Our review of the circuit court's summary judgment ruling is *de novo.* "A circuit court's entry of summary judgment is reviewed de novo." Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189 451 S.E.2d 755 (1994). "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

### A.

In 1995, Linn Mining borrowed $150,000.00 from Bank One, and signed a commercial promissory note and security agreement, dated November 6, 1995, for that amount. On the face of the note, to secure the debt, Linn granted Bank One a security interest in

> [A]ll accounts receivable, inventory, machinery and equipment, furniture and fixtures . . .

Along with the promissory note and security agreement, Linn Mining also signed three UCC financing statements. Two of the financing statements covered Linn's equipment and fixtures. The third financing statement—the one that is relevant to the instant case—stated that the financing statement covered as collateral:

> All accounts, contract rights, chattel paper, general intangible, and rights to payment of every kind now owned or hereaf-

ter arising out of the business of the debtor; all interest of the debtor in any goods, the sale or lease of which shall have given or shall give rise to any of the foregoing; all inventory of debtor whether now owned or hereafter acquired, located or to be located at 896 Lodgeville Road, Bridgeport, West Virginia, or any other place the debtor may do business.

The third financing statement also said that "Proceeds of Collateral are also covered."

The third financing statement was filed on November 13, 1995, with the West Virginia Secretary of State and with the clerk of the Harrison County Commission. In August of 2000, continuation statements were filed in both places.

Thereafter, the appellant conducted mining activity for Linn, and a dispute led to the lawsuit that resulted in the judgment against Linn. It appears that Linn was "in default" on its payments to Bank One on the note well before the jury's verdict in the lawsuit; however, Bank One did not foreclose on its note and was "working" with the company, which was still doing business after the verdict. From January 2, 2001 to May 18, 2001, Linn mined more than 25,000 tons of coal. On February 9, 2001, a check for $26,665.64 from a Linn coal customer was deposited in Linn's HCB account.

### B.

The parties have stipulated that the applicable law for the instant case is the version of the "Uniform Commercial Code Secured Transaction" statutes, *W.Va.Code,* Chapter 46, Article 9, that was in effect prior to July 1, 2001, and we proceed upon that stipulation.[1]

### C.

■■■ The appellant's principal argument is that a legally enforceable security interest

---

1. The editor's comments to statutory changes to Chapter 46, Article 9 that were enacted in 2000 and took effect July 1, 2001 state that "the new provisions are sufficiently different, in both content and format, that a detailed explanation of the changes and the retention of historical cita-

tions from the former laws were impracticable." Our citations to statutes in the instant opinion, then, are to statutes that are no longer effective, although their language and/or substance may be carried over in whole or in part into current statutes.

in the proceeds of the sale of coal by Linn Mining was never granted to Bank One.

The appellant says that the provisions of *W.Va.Code*, 46–9–402(1) are controlling; this section provided in pertinent part that:

When the financing statement covers timber to be cut or covers *minerals or the like [including oil and gas] or accounts subject to subsection (5) of section 9–103*, or when the financing statement is filed as a fixture filing (section 9–313) and the collateral is goods which are or are about to become fixtures, *the statement must also comply with subsection (5)* [*W.Va.Code*, 46–9–402(5)].

*Id.* (Emphasis added.)

Under *W.Va.Code*, 46–9–402(5), a financing statement must

... recite that it is to be filed for record in the real estate records, and the financing statement must contain a description of the real estate sufficient if it were contained in a mortgage ....

Thus, pursuant to *W.Va.Code*, 46–9–402(1), the "real estate records" filing requirement of *W.Va.Code*, 46–9–402(5) applied only to "minerals ... subject to [46–9–103(5)]," which addresses:

... a security interest which is created *by a debtor who has an interest in minerals or the like before extraction* and which attaches thereto as extracted, or which attaches to an account resulting from the sale thereof at the wellhead or minehead ....

(Emphasis added.)

In the instant case, there is no allegation that when Linn borrowed $150,000.00 in 1995, Linn had an interest in the coal it mined in 2001—or that Linn, in 1995, sought to create a security interest by Bank One in minerals that Linn had an interest in before extraction, which interest would attach thereto as the minerals were extracted.[2]

Therefore, the real estate filing requirement of 46–9–402(5) is not applicable to Bank One's security interest and financing statement. The appellant's argument that Bank One did not obtain a security interest, because Bank One did not file its financing statement in the real estate records, does not prevail.

Appellant also argues that Bank One did not obtain in 1995 a security interest in any coal later mined by Linn, or the proceeds therefrom. Only in 2001, argues Linn, when the coal was mined, could the coal and proceeds thereof become subject to Bank One's broad lien on Linn's "accounts[,] ... rights to payment[,] ... goods[,] ... [and] inventory." However, the 1995 financing statement applied to "all accounts ... of every kind *now owned or hereafter arising*" and "all inventory of debtor *whether now owned or hereafter acquired ...*." For this reason, appellant's argument on this point must also fail.

### III.

In summary, we hold that Bank One was not required to follow real property-related requirements to obtain an effective security interest in the proceeds of coal mined by Linn, and that the terms of that security interest included Linn's future-acquired accounts and property.

We therefore affirm the rulings of the circuit court.

Affirmed.

STARCHER, Justice, concurring.

(Filed Dec. 10, 2002)

I write separately to point out that the appellant presented a legally thorough case, relying effectively on the statute, to justify his claim to the proceeds from the mining of the coal in question. Unfortunately, however, the appellant's claim must fail because the financing scheme for businesses like Linn

---

**2.** Under *W.Va.Code*, 46–9–402(5), such real property-related security interests were to be recorded with real estate records presumably to give notice of the pledged security interest in the minerals in place, to attach as extracted, to prospective purchasers, etc., of the minerals (or similarly, to purchasers of real estate where pledged

fixtures are to be installed). Thus, had a lender to Linn taken a security interest in minerals in place in which Linn had an interest, before November 1995, and filed the proper financing statement in the real estate records, that interest could arguably take priority over Bank One's interest.

Mining is dependent on initial lenders having a prioritized security interest in a business' accounts and inventory. There are no allegations of any improper collusion, fraud, or other equitable misconduct involving Bank One or Linn Mining that could undo the Bank's priority. On this basis, I applaud the efforts of the appellant, but must concur in the Court's judgment.

McGRAW, Justice, dissenting.

(Filed Dec. 11, 2002)

A concern I have with this case is that at the end of the day it appears we have a contractor who has gone without compensation while a mining company continues to operate, ostensibly without any intent to ever pay this debt. This appeal presented several very technical issues concerning the priority of liens under the Uniform Commercial Code, and it is understandable that the majority did not wish to disturb the foundations of what is an intricate and delicately constructed legal edifice.

However it is a grave concern to me that this decision suggests that the hundreds of West Virginia businesses, small and large, that supply equipment, supplies, or labor to mining companies have very little security in these transactions. We are often reminded that a coal mining operation creates many indirect jobs beyond the boundaries of the mine for suppliers and contractors, and that these large operations provide much needed jobs to your mom and pop businesses in the smaller communities of this state. However, these jobs are cold comfort if the mining operation never actually makes its promised payments.

It must be especially disheartening to the appellant, and others like him, who supply goods or services to the coal industry, that even after going to the trouble and expense of a lawsuit, and then winning a judgment in court against this defendant, he is still unable to get paid for the work he has performed. What is not clear from the record is why Linn Mining is apparently able to continue doing business without paying the appellant the money it owes him. We have discussed in previous cases that a business must follow all requirements of our corporations act to enjoy its protections. *See, Laya v. Erin Homes, Inc.,* 177 W.Va. 343, 352 S.E.2d 93 (1986); *Southern Electrical Supply Co. v. Raleigh County National Bank,* 173 W.Va. 780, 787, 320 S.E.2d 515, 522 (1984) ("[j]ustice may require that courts look beyond the bare legal relationship of the parties to prevent the corporate form from being used to perpetrate injustice, defeat public convenience or justify wrong . . ." (citation omitted)). It may be that there is still some opportunity for this appellant to recover the money owed to him.

In summation, I recognize that the law must strike a delicate balance between those who provide the necessary capital to support a mining operation, and those who extend their faith and credit by supplying goods or services. The majority has, understandably, chosen a conservative course through a very technical area of our law. Nonetheless, I am concerned about the message this decision might send to those who equip, supply, and support our coal industry.

Therefore, I respectfully dissent.