UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-1046

ORIN S. JOHNSON; GARY A. JONES; and AM-RAD, Inc.,

Plaintiffs - Appellants,

v.

SAMUEL B. ROSS, II,

Defendant - Appellee.

Appeal from the United States District Court for the Southern District of West Virginia, at Parkersburg. Joseph R. Goodwin, Chief District Judge. (6:08-cv-00313)

Argued: December 9, 2010          Decided: March 23, 2011

Before AGEE and WYNN, Circuit Judges, and Patrick Michael DUFFY, Senior United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished opinion. Judge Wynn wrote the opinion, in which Judge Agee and Senior Judge Duffy concurred.

**ARGUED:** Leonard Rose, LATHROP & GAGE, LLP, Kansas City, Missouri, for Appellants. William E. Hamb, ROBINSON & MCELWEE, PLLC, Charleston, West Virginia, for Appellee. **ON BRIEF:** Amy Loth Allen, LATHROP & GAGE, LLP, Kansas City, Missouri; Greer S. Lang, Lawrence, Kansas, for Appellants. Joseph S. Beeson, Christopher L. Hamb, ROBINSON & MCELWEE, PLLC, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Under West Virginia law, "if benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value."[1] Plaintiffs contend that Defendant, a corporate officer and shareholder, must disgorge the benefit he received from Plaintiffs. However, because the benefits were conferred only on the corporation and Plaintiffs make no argument for piercing the corporate veil, we affirm the district court's grant of summary judgment for Defendant.

I.

In 1995, Gary A. Jones and Orin S. Johnson began designing improvements to the welding process used in the construction of window frames. In 1999, they received two patents for technology enabling the corners of a thermoplastic window frame to be welded together using radiant heat instead of a flash.[2]

---

[1] Realmark Devs., Inc. v. Ranson, 208 W. Va. 717, 721-22, 542 S.E.2d 880, 884-85 (2000).

[2] On January 5, 1999, Jones and Johnson received U.S. Patent No. 5,855,720 entitled "Clamping Head for Use in Joining Plastic Extrusions and Method Thereof." On May 11, 1999, Jones and (Continued)

3

They assigned ownership of the patents to Am-Rad, Inc., a Minnesota corporation.

In 2004, Millennium Marketing Group, Ltd. ("Millennium"), a Kansas corporation acting as the marketing agent for Jones, Johnson, and Am-Rad (collectively "Plaintiffs"), began discussions with Simonton Building Products, Inc., and Simonton Holdings, Inc., (collectively "Simonton") about the Am-Rad technology. At the time of these discussions, Simonton was controlled by Defendant Samuel B. Ross, II.

On or about November 21, 2004, Millennium, Jones, Johnson, and Am-Rad entered into a License Agreement with Simonton for the licensing and use of the patented Am-Rad technology. The License Agreement granted Simonton an exclusive license[3] to "prove out" the Am-Rad technology and adapt it "into a production mode" for use in the fenestration (i.e. window making) industry. The License Agreement further provided for

---

Johnson received U.S. Patent No. 5,902,447 entitled "Deflashing Head and Method for Joining Plastic Extrusions."

[3] The agreement contemplated a series of licensing options that could be exercised successively by Simonton upon payment of specified sums of money. On July 15, 2005, the license agreement was amended by adjusting the duration of certain licensing options and the amount of consideration paid to exercise those options. The parties do not dispute that Simonton held an exclusive license to utilize the Am-Rad technology, as contemplated in the License Agreement, during all times relevant to this dispute.

4

the future establishment of a joint venture for the marketing of the Am-Rad technology. The joint venture would be organized as a limited liability company formed and operated "for the sole purpose of marketing and selling to others the right to use the [Am-Rad] Technology in the fenestration industry." Simonton agreed to "contribute to the capital of the LLC any enhancements or additional patents it may acquire as the result of placing into production products utilizing the [Am-Rad] Technology."

Although not required under the terms of the License Agreement, at Defendant's request Jones and Johnson provided services, as well as expertise and confidential information regarding the Am-Rad technology. They maintain that their services ultimately contributed to the development of new fenestration technology. Specifically, Plaintiffs' amended complaint states that Jones and Johnson provided "services and efforts with regard to the fixtures, heat plates, drawings, information pertaining to the time, temperature, and distance settings for the welding process, as well as other confidential, proprietary information and know-how." Additionally, Plaintiffs assert that Jones and Johnson made numerous trips to Simonton's research and development facilities in Pennsylvania and its production plants in West Virginia. Also, Plaintiffs provided consultation services on the telephone and in person.

Plaintiffs further allege that they provided assistance to Simonton in reliance on Defendant's repeated representations and assurances that they would be compensated. According to Plaintiffs, Ross and other Simonton officers told Jones and Johnson "that Plaintiffs and Simonton were partners" with equal rights to any jointly developed technology and the resulting profits.[4]

Notwithstanding these oral assurances, Plaintiffs maintain that Defendant acted as though Simonton was the sole owner of technology developed with the assistance of Jones and Johnson. Specifically, Plaintiffs contend that Defendant caused Simonton to file patent applications for the jointly developed technology without listing Plaintiffs as inventors.[5] And Plaintiffs contend that Defendant received an inflated amount of merger

---

[4] Plaintiffs maintain that Defendant assured them that they were "partners" that were "in it together" and that Plaintiffs would jointly own and share in the profits of any jointly developed technology.

[5] On December 30, 2005, Simonton filed a patent application for window manufacturing technology. On December 15, 2006, Simonton filed a second application for window manufacturing technology. According to the complaint, both of Simonton's patent applications are still pending in the U.S. Patent and Trademark Office. Plaintiffs alleged that the Simonton patent applications proposed claims that were enhancements or improvements to the Am-Rad technology that had been jointly developed by the parties. Plaintiffs alleged, moreover, that the Simonton patent applications violated the terms of the License Agreement.

consideration on the basis of representations to the proposed buyer that Simonton owned the jointly developed technology.

Defendant concedes that in 2005, he and the chief financial officer for SBR, Inc. ("SBR"), the parent company of which Simonton was a subsidiary, discussed the possibility of marketing SBR for sale.[6] Fortune Brands, Inc., ("Fortune Brands") was a Delaware corporation that appeared interested in acquiring SBR. At the August 2005 meeting of the Board of Directors of SBR, it was decided that Ross should contact Fortune Brands to gauge its interest in acquiring SBR. In November 2005, SBR sent a formal offering memorandum to Fortune Brands, and in December 2005 representatives of Fortune Brands and SBR met to discuss the business operations of the SBR subsidiaries. Plaintiffs maintain that during these December meetings, John Brunett, then-president of Simonton, represented to Fortune Brands that Simonton possessed "new" fenestration technology. Plaintiffs assert that Defendant knew that this was false and failed to correct Burnett's misrepresentations. Fortune Brands made an initial offer to purchase SBR on December

---

[6] Defendant was the chairman and chief executive officer of SBR and also a member of SBR's board of directors. [J.A. 303] He was also chairman of Simonton's board of directors. [J.A. 303] According to Defendant, he was one of some 344 stockholders of SBR. [J.A. 303]

13, 2005. In June 2006, Fortune Brands acquired 100% of SBR's outstanding stock for $595 million.[7]

Plaintiffs filed suit against Defendant on a theory of unjust enrichment,[8] seeking restitution for "the increased value Ross received in the sale of his entities and assets to Fortune Brands" as a result of the jointly developed technology.[9] Plaintiffs also sought to compel Defendant to disgorge the value of the confidential information shared with Simonton, the value of the services provided, and the value of the jointly developed technology itself.

On December 10, 2009, the district court entered a memorandum opinion and order granting summary judgment to Defendant on two grounds. First, the court noted that West Virginia law provides that "[a]n express contract and an implied

_____

[7] As noted by the district court, "[t]he actual transaction involved several steps." Fortune Brands created Brightstar Acquisition LLC, which merged into SBR on June 7, 2006. On June 9, 2009, with the approval of its shareholders, SBR merged into SBR, LLC. SBR's shareholders received consideration for their shares from Fortune Brands.

[8] Plaintiffs' initial complaint also included a claim for breach of fiduciary duty. That claim was deleted from Plaintiffs' First Amendment Complaint, filed on August 12, 2009.

[9] Essentially, Plaintiffs allege that Defendant touted the parties' jointly developed technology to Fortune Brands and was able to negotiate a higher sale price for the Simonton entities and assets as a result of receiving the services of Jones, Johnson, and Am-Rad than Defendant would have received had he not improperly used Plaintiffs' information and technology. [J.A. 49]

contract relating to the same subject matter can not co-exist." Case v. Shepherd, 140 W. Va. 305, 311, 84 S.E.2d 140, 144 (1954). The district court concluded that Plaintiffs' unjust enrichment claim was precluded because the License Agreement governed the identical subject matter.[10] Second, as an alternative justification for its holding, the district court noted that shareholders are generally not liable for a corporation's acts. See Laya v. Erin Homes, Inc., 177 W. Va. 343, 346, 352 S.E.2d 93, 96-97 (1986) ("This limited liability is one of the legitimate advantages of doing business in the corporate form."). The district court opined that Defendant acted on behalf of the corporation when he dealt with Plaintiffs and when he negotiated the sale of SBR. The district court found no justification for piercing the corporate veil, noting Plaintiffs' failure to even "advance such an argument." The district court consequently found no grounds for holding Defendant personally liable. Plaintiffs appealed.

---

[10] We need not consider whether the district court erred in ruling that the existence of the License Agreement precluded Plaintiffs' recovery for unjust enrichment, as we affirm on separate grounds. See Catawba Indian Tribe of S.C. v. City of Rock Hill, S.C., 501 F.3d 368, 372 n.4 (4th Cir. 2007) ("[W]e review judgments, not opinions. We are accordingly entitled to affirm the district court on any ground that would support the judgment in favor of the party prevailing below." (citation omitted)).

II.

"We review the district court's order granting summary judgment *de novo*." Robb Evans & Assoc., LLC v. Holibaugh, 609 F.3d 359, 364 (4th Cir. 2010).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and Defendant, the movant, "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In conducting our review, "we view all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party."  Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 603 (4th Cir. 2002).

Defendant suggests that this well-established standard of review should be modified, "at least with regard to inferences that may be drawn from undisputed facts."  Brief of Appellee at 28.  Defendant maintains that "the clearly erroneous standard would be the proper standard to apply to inferences drawn by the district judge from the undisputed evidence at the summary judgment stage."  Brief of Appellee at 29.

Defendant's argument stems from a mistaken interpretation of this court's opinion in International Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Etrangers a Monaco, 329 F.3d 359 (4th Cir. 2003).  In that case, the plaintiff contended that the district court exceeded its summary judgment authority by making factual determinations.  Id. at 362.  Noting that the parties had "agreed to submit the voluminous record to the court

10

for dispositive decision" and that the district court's disposition simply resolved disputes concerning the inferences drawn from undisputed material facts, we held that the district court had properly proceeded to judgment. Id. However, we also noted that because the district court "engaged in fact-finding to dispose of the matter, we review its findings of fact for clear error." Id.

Defendant asserts that International Bancorp supports the proposition that where only equitable relief is sought, we review the inferences drawn by the district court for clear error. Defendant's reliance on International Bancorp is misplaced. The clear error standard announced there referred only to our review of factual findings made by the district court in the rare scenario where such "fact-finding" was appropriate at the summary judgment stage. Here, no factual determinations were made. Lacking any predicate findings of fact by the district court, we decline to apply a clear error standard. Instead, our review is limited to a de novo determination of whether Defendant was entitled to judgment as a matter of law with respect to Plaintiffs' unjust enrichment claim.

III.

Generally, a plaintiff seeking restitution on a theory of unjust enrichment must establish (1) a benefit conferred on the defendant by the plaintiff, (2) an appreciation or knowledge by the defendant of the benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. 26 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 68:5 (4th ed. 2003); see also Realmark Devs., 208 W. Va. at 721-22, 542 S.E.2d at 884-85 ("[I]f benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value."); Dunlap v. Hinkle, 173 W. Va. 423, 427 n.2, 317 S.E.2d 508, 512 n.2 (1984) ("Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." (quotation omitted)).

We need not consider whether Jones and Johnson conferred a benefit on Simonton. This case does not concern an unjust

12

enrichment claim against the beneficiary corporation.[11]  Instead, Plaintiffs seek restitution from Ross individually. Accordingly, the threshold question is whether Plaintiffs conferred on Ross individually a benefit which would be inequitable for him to retain without making payment to Plaintiffs.

Our review of the record reveals no such benefit.  Each of the actions taken by Johnson and Jones benefitted Ross, if at all, only indirectly by virtue of his status as a Simonton shareholder.  Plaintiffs cite no West Virginia case establishing that an unjust enrichment action can be sustained against the indirect recipient of a benefit conferred by a plaintiff. Different states have reached opposite conclusions when addressing this issue.  Compare Extraordinary Title Servs., LLC v. Fl. Power & Light Co., 1 So.3d 400, 404 (Fla. Dist. Ct. App. 2009) (affirming dismissal of unjust enrichment claim because "Plaintiff cannot allege nor establish that it conferred a direct benefit on [defendant]"); Johnson v. Microsoft Corp., 106 Ohio St.3d 278, 286, 834 N.E.2d 791, 799 (2005) ("The rule of law is that an indirect purchaser cannot assert a common-law

---

[11]  In a related case filed in federal district court in Kansas, Plaintiffs sued Simonton and Fortune Brands for, *inter alia*, unjust enrichment.  See Johnson, et al. v. Simonton Bldg. Prods., Inc., No. 08-cv-2198 (D. Kan. 2008).

13

claim for restitution and unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser.") with Bank of Am. Corp. v. Gibbons, 173 Md. App. 261, 271, 918 A.2d 565, 571 (Md. Ct. Spec. App. 2007) ("[A] cause of action for unjust enrichment may lie against a transferee with whom the plaintiff had no contract, transaction, or dealing, either directly or indirectly."); Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005) ("[T]o recover for unjust enrichment, a plaintiff need not establish that the defendant received a direct benefit from the plaintiff."); State ex rel Palmer v. Unisys Corp., 637 N.W.2d 142, 155 (Iowa 2001) ("We have never limited [unjust enrichment] to require the benefits to be conferred directly by the plaintiff."). We decline Plaintiffs' invitation to settle this state-law question, not least because doing so is unnecessary to reach our disposition.

If West Virginia law would not allow an unjust enrichment suit against an indirect beneficiary, summary judgment should have been granted to Defendant. If, alternatively, an indirect beneficiary could be sued for unjust enrichment, Plaintiffs' unjust enrichment action still fails because Defendant benefitted only as a Simonton shareholder; thus, to wrest the benefit from him would require us to pierce the corporate veil shielding him from liability.

14

Assuming that the technical assistance provided by Johnson and Jones was valuable, that value was realized by Simonton, the company undertaking to improve the Am-Rad technology, rather than by Defendant individually. Similarly, the value of the confidential information disclosed to Simonton employees cannot be said to have been conferred on Defendant. Further, insofar as Plaintiffs seek to compel Ross to disgorge the value of the jointly developed technology, they fail to demonstrate that Ross himself became the unjust recipient of the value of that technology.

Indeed, the only mention of a benefit realized by Ross individually is Plaintiffs' allegation that Ross received an inflated payment as a Simonton shareholder when the company merged with Fortune Brands by virtue of alleged misrepresentations that Simonton owned the technology jointly developed with the assistance of Johnson and Jones. Despite their attempts to avoid the consequence of this allegation, Plaintiffs essentially contend that the corporation unjustly received a benefit in the form of increased merger consideration and then ask us to wrest a portion of that increased merger consideration from Ross, an individual shareholder, on the grounds that Ross facilitated the unjust enrichment.

However, "[t]he law presumes . . . that corporations are separate from their shareholders." S. Elec. Supply Co. v.

15

_Raleigh Cnty. Nat. Bank_, 173 W. Va. 780, 788, 320 S.E.2d 515, 523 (1984). Even assuming _arguendo_ that Simonton was unjustly enriched, this does not, without more, give rise to liability on the part of Ross as an individual. See _U.S. ex rel. Purcell v. MWI Corp._, 520 F. Supp. 2d 158, 173 (D.D.C. 2007) ("The plaintiff may only rely on an inference that a stockholder by means of his corporate equity received a benefit if the plaintiff shows that the stockholder abused the corporate form, using it as his own alter ego to perpetuate fraud-in which case, the corporate veil should be pierced.").[12]

West Virginia law recognizes that "[u]nder exceptional circumstances, . . . . '[j]ustice may require that courts look beyond the bare legal relationship of the parties to prevent the corporate form from being used to perpetrate injustice, defeat public convenience or justify wrong. However, the corporate form will never be disregarded lightly.'" _Laya_, 177 W. Va. at 347, 352 S.E.2d at 97 (quoting _S. States Co-op., Inc. v. Dailey_, 167 W. Va. 920, 930, 280 S.E.2d 821, 827 (1981)). Moreover,

---

[12] See also _Metalmeccanica Del Tiberina v. Kelleher_, No. 04-2567, 2005 WL 2901894, at *4 (4th Cir. 2005) (unpublished) (affirming rejection of unjust enrichment claim against corporate officer with observation that "[a]t most, [the plaintiff] can demonstrate that [the defendant corporation], as opposed to [its owner], received a nongratuitous benefit. Any benefit [the owner] received . . . came from [the corporation]-not [the plaintiff]").

"the burden of proof is on a party soliciting a court to disregard a corporate structure." S. Elec. Supply Co., 173 W. Va. at 787, 320 S.E.2d at 522. We agree with the district court that Plaintiffs have not carried that burden.

Piercing the corporate veil "is an equitable remedy, the propriety of which must be examined on an *ad hoc* basis." Laya, 177 W. Va. at 347, 352 S.E.2d at 98. "[D]ecisions to look beyond, inside and through corporate facades must be made case-by-case, with particular attention to factual details." S. Elec. Supply Co., 173 W. Va. at 787, 320 S.E.2d at 523. For this reason, "the propriety of piercing the corporate veil should rarely be determined upon a motion for summary judgment. Instead, the propriety of piercing the corporate veil usually involves numerous questions of fact for the trier of the facts to determine upon all of the evidence." Laya, 177 W. Va. at 351, 352 S.E.2d at 102.

The Laya court's reluctance to absolutely foreclose summary judgment accommodates courts faced with cases, such as this one, wherein no attempt whatsoever is made to "pierce the veil." Indeed, Plaintiffs insist that "[i]t is not necessary to pierce the corporate veil in order to impose personal liability" on Ross. Opening Brief at 35.

Plaintiffs argue that because Ross, acting as a corporate officer, knowingly participated in alleged wrongdoing, he is

17

personally liable. Plaintiffs cite a host of cases for the proposition that a corporate officer may be held personally liable for tortious activity of the corporation when the officer sanctions or participates in the wrongful conduct. See, e.g., Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc., 188 W. Va. 468, 472, 425 S.E.2d 144, 148 (1992) ("'A director or an officer of a corporation does not incur personal liability for its torts merely by reason of his official character unless he has participated in or sanctioned the tortious acts[.]'" (quoting Cato v. Silling, 137 W. Va. 694, 717, 73 S.E.2d 731, 745 (1952))). However, Plaintiffs point to no tort committed against them by either Simonton or Ross. Moreover, we are mindful that the theory of recovery in an unjust enrichment action renders it more akin to a contract action than a tort action. See Ross Eng'g Co. v. Pace, 153 F.2d 35, 45 (4th Cir. 1946) (observing that in cases of unjust enrichment "a contract to pay is implied in law"). We recognize that a judicially implied "quasi-contract" is not actually a contract. However, we are disinclined to analogize to the cases cited by Plaintiffs given the different justifications that support imposing personal liability on corporate officers for corporate torts as opposed to corporate contractual obligations. S. Elec. Supply Co., 173 W. Va. at 787 n.13, 320 S.E.2d at 522-23 n.13. ("Some courts will more readily disregard a corporate form in cases of

18

tort liability than in contract cases because contracts are voluntarily entered into with the corporate structure.").

Piercing the veil in the context of a breach of contract does not rest on participation liability, as it would under a tort theory. Instead, the Supreme Court of West Virginia has stated that

> [I]n a case involving an alleged breach of contract, to "pierce the corporate veil" in order to hold the shareholder(s) actively participating in the operation of the business personally liable for such breach to the party who entered into the contract with the corporation, there is normally a two-prong test: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and of the individual shareholder(s) no longer exist (a disregard of formalities requirement) and (2) an inequitable result would occur if the acts are treated as those of the corporation alone (a fairness requirement).

Laya, 177 W. Va. at 349, 352 S.E.2d at 99. This two-prong test underscores why piercing the corporate veil would be imprudent under a theory that an implied contract existed between Plaintiffs and Defendant. There was no "unity of interest and ownership" that would establish that Ross was impliedly contracting on his own behalf. Instead, even taking the evidence in the light most favorable to Plaintiffs, Ross made promises, whether express or implied, on behalf of the corporation. Thus, if a benefit was conferred on the basis of those promises, the corporation, not its officers, would be the entity unjustly enriched by the failure to keep those promises.

19

Accordingly, we conclude that Defendant is not subject to personal liability for unjust enrichment, if any, on the part of Simonton. Because Plaintiffs fail to demonstrate any benefit retained by Defendant other than that realized by virtue of his status as a shareholder, they cannot maintain a cause of action for unjust enrichment against him individually. The district court therefore did not err in granting Defendant's motion for summary judgment.

<u>AFFIRMED</u>